## No. 10,869.

STANDARD CHEMICAL CO. *v.* CURTIS, ASSESSOR, ET AL.

Decided March 2, 1925.

Action to correct erroneous assessment of mining property. Judgment for defendants.

*Reversed.*

1.  TAXES AND TAXATION—*Mining Property—Ore.* The term "ore" as used in section 7260, C. L. '21, concerning assessment of mining property, has reference to ore extracted from the mine before treatment or reduction has taken place.

2.  *Mining Property—Gross Value.* "Gross value," as used in the statute concerning the assessment of mining property must be determined from the ore actually extracted from the mine; it includes cost of extraction, and excludes cost of treatment, reduction, sale and transportation.

3.  *Excessive Taxation—Burden.* The burden of proof is on the taxpayer to establish his allegation of excessive assessment.

4.  *Valuation by Assessor—Presumption.* The power to determine value of property for taxation is lodged in the assessor, whose valuation is presumed to be right.

5.  APPEAL AND ERROR—*Taxation—Assessment—Findings.* Finding of the trial court on conflicting evidence that an assessment of mining property did not appear manifestly excessive, fraudulent or oppressive, not disturbed on review.   •

*Error to the District Court of Montrose County, Hon. Thomas J. Black, Judge.*

Messrs. PERSHING, NYE, FRY & TALLMADGE, Mr. LEWIS A. DICK, for plaintiff in error.

Messrs. MOYNIHAN, HUGHES, KNOUS & FAUBER, for defendants in error.

*Department One.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

THE action in the district court was there on appeal from an assessment made by the assessor of Montrose county upon a producing mining property and other property of the Standard Chemical Company, and the refusal of the board of county commissioners to correct the assessment of which the plaintiff complained. On the adverse decision of the assessor and the board of county commissioners to its objections to the assessment, the plaintiff paid to the county treasurer, under protest, the $10,255 tax imposed upon it, as a condition precedent to the exercise of the right of appeal to the district court, under section 7292, C. L. 1921, and there sought to have the assessment reviewed and to recover back from the county the excess tax. The case was tried to the court without a jury, and from an adverse decision of the district court the plaintiff brings the case here for review.

The plaintiff was engaged in mining precious metals, namely, uranium and vanadium, and its mines were classified under the statute, for the purpose of taxation, as a producing mine. Section 7260, C. L. 1921.

The statutes pertinent to the valuation of producing mines are the following sections of C. L. 1921:

"7261. * * * All mines and mining claims bearing gold, silver, lead, copper or other precious or valuable minerals and possessory rights therein classified under the laws of this state as producing mines shall be assessed annually for the purposes of taxation as herein provided.

(a) Every person, or persons, corporations or association owning or operating any mines or mining claims which shall be a producing mine, as defined in section 5618, revised statutes of Colorado, 1908, shall between the 1st and 15th days of January in each year, make out and deliver to the assessor of the county wherein such property is situate, a statement showing:

First—The name of the mine or mining claim.

Second—The name or names, of the owner, or owners, thereof.

Third—The number of acres contained in such mine or mining claims.

Fourth—The number of tons of ore extracted during the preceding year.

Fifth—The gross value of any such ore extracted, in dollars and cents.

Sixth—The actual cost of extracting same from mine, which shall include cost of liability and workmen's compensation insurance, but shall not include the salaries of any officers or agents not actively and consecutively engaged in or about the mine.

Seventh—Actual cost of transportation to place of reduction or sale.

Eighth—Actual cost of treatment, reduction or sale.

Ninth—The net proceeds, in dollars and cents, after deducting the above expenses.

Which statement shall be signed and sworn to by such person or the superintendent or managing agent of such corporation or association.

(b) The assessor, when he receives such statement, shall determine the gross proceeds of any such producing mine or mining claim for said preceding year, and shall at the same time determine the net proceeds as herein defined for said preceding year, and shall, for the purpose of assessment for taxation, value such producing mine, or mining claim at a sum equal to one-fourth of the said gross proceeds for said preceding year for any such mine or mining claims; Provided, however, that if the net proceeds as herein defined of any such producing mine or mining claim for said preceding year exceeds one-fourth of the gross proceeds as herein defined, then any such producing mine or mining claim shall be valued for the purpose of assessment for taxation at the amount determined by the assessor as the net proceeds for said preceding year for

any such producing mine or mining claim; Provided, further, That any number of contiguous claims owned and operated as one property by the same person, persons, association or corporation, the gross production of which shall be more than five thousand dollars per annum, shall be deemed and considered to be one producing mine for the purposes of this act.   *   *   *

"7262.   All surface improvements and all machinery located upon any mine or mining claim, or claims, shall be separately valued for taxation and shall be taxed at their full cash value."

The plaintiff filed with the assessor its statutory statement and its tax schedule, in apt time.   Plaintiff made a return in its schedule of 6,021 tons of ore extracted from its mines for the year 1921, and fixed its gross value at $120,000.   The assessor changed the schedule from 6,021 tons of ore extracted to 1,281 tons, and placed its gross value at $768,600.   There being no net proceeds, as both parties concede, it follows, from the provision of the statute, that the assessed valuation for 1922 of this mining property, for the purposes of taxation, had to be one-fourth of the gross proceeds for the year 1921.   It is not controverted that the assessment should be based upon one-fourth of the gross proceeds, nor do the parties disagree as to the cost of transportation of the ore or cost of treatment and reduction, but they do disagree as to the number of tons of ore extracted and its gross value.   The plaintiff based its tonnage, as returned in its schedule, on the quantity of ore actually extracted and delivered to the surface, at the mouth of the mine, whereas the assessor took the tonnage of concentrates, after the ore had been transported from the mouth of the mine to the mill and subjected to mill treatment and reduced to the form of concentrates.   This proceeding adopted by the assessor was not in accord with the rules prescribed by the statute for his guidance in determining the value of a producing mine.

When the statute required the statement to show the number of tons of ore extracted for the guidance of the

assessor, the legislature used the word "ore" in the usual sense in which that term was employed by those engaged in that industry. Webster says: "The term ore has usually been applied, among miners, to the crude material obtained, without other than hand sorting of the lumps." The statute has reference to the gross tonnage of ore extracted from the mine, before treatment or reduction has taken place.

It is uncontroverted that the ore actually extracted amounted to 6,021 tons, and the assessor was in error in refusing to adopt that tonnage, as "the number of tons of ore extracted during the preceding year."

The plaintiff placed the gross value of the 6,021 tons of ore extracted at $120,000, but the assessor, taking the tonnage of the concentrates as it came from the mill, reached a different and higher gross value. The gross value must be determined from the ore actually extracted from the mine, and not after mill treatment. Gross value includes cost of extraction and excludes cost of treatment, reduction, sale and transportation. *Paxson v. Cresson Co.,* 56 Colo. 206, 139 Pac. 531; *Tallon v. Vindicator Co.,* 59 Colo. 316, 149 Pac. 108. It clearly appears, from the uncontradicted testimony of several witnesses, that carnotite ore, such as the plaintiff produced from its mine in 1921, was bought and sold in the vicinity of the mine at $20 per ton. This we think, in the absence of a sale of the ore or concentrates, sufficient to establish the gross value of the ore extracted, for the purpose of determining the gross value of the ore under the statute.

The plaintiff in error made further objections to the action of the assessor in raising the valuation in its tax schedule on the improvements and machinery located on its mining property. The burden of proof was on the Chemical Company to establish its allegation of excessive assessment. The power to determine the valuation of the property for taxation is lodged in the assessor, and when he has acted and determined the value, it is presumed to be right. The statute permitting an appeal to the courts

provides that the court to which an appeal is taken "shall not review or give relief against an assessment unless it shall appear manifestly excessive, fraudulent or oppressive." The evidence was conflicting, and the testimony of the Company's superintendent and bookkeeper, and its books, which were not brought up in the record, are contradictory and unsatisfactory, and the finding of the court on this state of the evidence, that it did not appear that the assessment was manifestly excessive, fraudulent or oppressive, cannot be disturbed.

The judgment is reversed and the cause remanded, with directions to the lower court to ascertain the proportion of the taxes to be refunded to the plaintiff by the county treasurer in harmony with the rule announced in this decision, together with ten per cent interest, as provided by statute.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.