[No. 7759]

PAXSON COUNTY TREASURER OF TELLER COUNTY ET ALS V. CRESSON GOLD MINING & MILLING COMPANY.

1. STATUTES—*Construction*—The fundamental rule for the construction of a statute is to ascertain the intention of the legislature, and to this end to give effect, if possible, to every word thereof, and as far as possible reconcile the terms employed so as to render it consistent and harmonious.

2. ———*Construed*—The statute, (Rev. Stat. § 5619) requires every person operating a producing mine to return to the assessor, within specified days in each year, a statement showing, among other things, the gross value of the ore extracted during the preceding year, the cost of extraction, cost of transportation to the place of reduction or sale, the cost of reduction or sale, and, "the net proceeds after deducting the above expenses;" and provides (§ 5620) that the assessor shall determine the gross proceeds of the mine for the preceding year, as well as the net proceeds, and value the mine at "one-fourth of the gross proceeds for the preceding year." *Held* that in ascertaining the gross proceeds for the purpose of the valuation the assessor should deduct from the gross value of the ores produced, both the cost of transportation to the place of reduction or sale, and the cost of reduction or sale.

*Error to Teller District Court.*—Hon. J. W. SHEAFOR, Judge.

GUY P. NEVITT, County Attorney, and Messrs. THOMAS, BRYANT, NYE & MALBURN, for plaintiffs in error.

Mr. HILDRETH FROST, for defendants in error.

Mr. N. WALTER DIXON, Mr. JOHN A. EWING, Messrs. WEST & STRICKLAND, and Mr. EDWARD C. STIMSON, *Amici Curiae.*

The Cresson Consolidated Gold Mining and Milling Company, a corporation, on behalf of itself and all other persons similarly situated, brought an action against the county treasurer and the board of county commissioners of the county of Teller, the purpose of which was to enjoin the sale of certain mines and mining claims of the parties plaintiff for delinquent taxes levied in 1910, and from attempting in any way or manner to collect them. The complaint attacked the validity of the taxes involved upon two grounds—(1) That the statutes under which such taxes were levied were unconstitutional. (2) That such taxes were not levied upon assessments made in conformity with the statutes. Other mining companies similarly situated joined as plaintiffs. The facts alleged in support of the second ground were to the effect that the assessed valuation of the mining properties involved was fixed at one-fourth of the gross value of the ores extracted without any deduction whatever. The issues made by the pleadings as to both questions of law and fact were whether the assessments had been made in conformity with the law. At the trial it was stipulated by the parties that during the year 1909 all of the ore mined, produced and shipped by the plaintiffs was sold to ore buyers, at the mines of the respective plaintiffs, and that such buyers paid all transportation charges upon the ore, and after treatment thereof deducted from its gross value the transportation and treatment charges, and remitted to the respective companies the balance left after

making such deductions, and that the only sums paid and received by the plaintiffs respectively for such ores . . were the amounts received from ore buyers after such deductions were made. According to the testimony the mining properties of the respective parties were valued at one-fourth of the gross value of the ore extracted during the year 1909. Judgment was in favor of the plaintiffs and a decree rendered enjoining the defendants from collecting or attempting to collect the taxes involved. This judgment was based upon the conclusion of law that the assessor in valuing the properties for the purpose of taxation should have fixed the valuation at one-fourth of the sums received for the ores extracted, instead of one-fourth of the gross value of such ores. The defendants have brought the case here for review on error and by stipulation of the parties it is agreed the only question necessary for determination is one of law, and relates solely to the construction and interpretation of the meaning of the term, 'gross proceeds,' as employed in section 81c of the revenue act of 1902, section 5620 of the Revised Statutes of 1908. The statutes relating to the assessment of producing mines are embraced in the following sections of the Revised Statutes of 1908:

"5619. Every person, or persons, corporation or association owning or operating any mines or mining claims which shall be a producing mine, as herein defined, shall, between the 1st and 15th days of January in each year, make out and deliver to the assessor of the county wherein such property is situate, a statement showing:

"First—The name of the mine or mining claim.

"Second—The name or names of the owner, or owners thereof. ·

"Third—The number of acres contained in such mine or mining claims.

"Fourth—The number of tons of ore extracted, during the preceding year.

"Fifth—The gross value of any such ore extracted, in dollars and cents.

"Sixth—Actual cost of extracting same from mine, which shall not include the salaries of any officers or agents not actively and consecutively engaged in or about the mine.

"Seventh—Actual cost of transportation to place of reduction or sale.

"Eighth—Actual cost of treatment, reduction or sale.

"Ninth—The net proceeds in dollars and cents, after deducting the above expenses.

"Which statement shall be signed and sworn to by such person or the superintendent or managing agent of such corporation or association.

"5620. The assessor, when he receives such statement, shall determine the gross proceeds of any such producing mine or mining claim for said preceding year, and shall, at the same time, determine the net proceeds as herein defined for said preceding year, and shall, for the purpose of assessment for taxation, value such producing mine, or mining claim at a sum equal to one-fourth of the said gross proceeds for said preceding year for any such mine or mining claim; Provided, however, That if the net proceeds as herein defined of any such producing mine or mining claim for said preceding year exceeds one-fourth of the gross proceeds as herein defined, then any such producing mine or mining claim shall be valued for the purpose of assessment for taxation at the amount determined by the assessor as the net proceeds for said preceding year for any such producing mine or mining claim."

Mr. Justice Gabbert delivered the opinion of the court:

From the foregoing statement it appears that the ore was sold at the mines and that the assessor valued each at one-fourth of the gross value of the ores sold from it. The trial court ruled that such valuation should have been made upon the basis of one-fourth of the sum received for such ore. The county officials contend that this ruling is erroneous, while on behalf of the mine owners it is claimed the judgment is correct and should be affirmed.

The statute prescribes the rules the assessor shall follow in valuing a producing mine for the purposes of taxation. He is required to determine from the statement delivered to him by the owner the gross and net proceeds of the mine for the period covered by such statement, and value it at one-fourth of the gross proceeds unless it appears that the net proceeds exceed the sum thus ascertained, in which event it shall be valued at the sum representing the net proceeds. It thus appears that the assessor from the statement furnished by the owner shall ascertain two classes of proceeds, namely, gross and net, and the real question presented is what constitutes, and how shall he determine, the gross proceeds of a mine from the owner's statement.

Referring to the statute which prescribes what items the owner shall exhibit in his statement to the assessor, we find it shall show the number of tons extracted during the preceding year, its gross value, the cost of extracting it from the mine, exclusive of the salaries of certain officers and agents, the cost of transportation to place of reduction or sale, the cost of treatment, reduction or sale, and the net proceeds after deducting these expenses. Had it been the intention of the legislature to require the assessor to value the property named in this statement at

one-fourth of the gross value of the ore thereby shown, it would have been so stated, instead of directing him to ascertain the gross proceeds of the mine and value it at one-fourth of that amount, unless the net proceeds exceeded that sum: or, to otherwise state it, the assessor would have been directed to value the mine at one-fourth of the gross value of the ore, unless, by the statement, it appeared the net proceeds exceeded that amount. It is evident, then, the legislature had in mind that the gross value of ore extracted from a mine, and the gross proceeds of such mine had different meanings. In order for the owner to realize any proceeds from the operation of his mine he must convert the ores extracted into cash. Such ore has a gross value. That, however, is not the amount the owner realizes from its sale. If he transports it to a smelter he must pay the cost of such transportation. This expense he is required to exhibit in his statement to the assessor. If he sold to a smelter a charge for reducing it is made, which is deducted from its gross value. This is an expense which he must also show by his statement. Each of these items of expense when deducted from the gross value of the ore leaves the owner the difference between such value and these expenses as the proceeds of the transaction. The same result would follow if the owner sold the ore at the mine. The purchaser would deduct the transportation and reduction charges from its gross value and the amount the owner would have in hand would be the same in each instance.

In a commercial sense proceeds is the sum of money accruing from a sale of property, and from the items which the statement of the owner must disclose it is evident the legislature in directing the assessor to ascertain the gross proceeds of a mine from such statement, meant that he should determine the sum received by the owner for his ores, by deducting from its gross value all

expenses mentioned in the statute except the cost of extracting it from the mine. This conclusion is fortified from the fact that the assessor is also required to ascertain from the statement furnished him by the owner the net proceeds of the mine, which would be the difference between the sum accruing to the owner from the sale of his ores and the expenses incurred in extracting it. from the mine—which he is allowed and required to exhibit in his statement. This construction of the statutes involved renders them harmonious, and free from ambiguity, by giving to the terms gross value and gross and net proceeds the distinctive meanings which as usually employed, they convey.

The fundamental rule to be followed in construing a statute is to ascertain and give effect to the intention of the legislature in adopting it, and give effect, if possible, to every word it contains, and as far as practicable reconcile the terms therein employed so as to render it consistent and harmonious. Following this rule, we think that the terms we have considered were employed with the intent to express the meaning they usually convey, and that under the facts of this case gross proceeds is the sum received by the owner from a sale of his ores at the mine.

If, as contended by counsel for the county officials, gross proceeds of a mine should be construed to mean the gross value of the ores disposed of, the statutory provisions under consideration would violate section three of article ten of the constitution, which provides that taxes shall be levied and collected under general laws prescribing such regulations as will secure just valuations for taxation of property. Take, for instance, two mines producing substantially the same class of ore, under similar conditions, one located near a market and the other several hundred miles distant; the owner of

the former pays but a small sum per ton to transport his ore to market, while the other, on account of the distance from the point where he can sell his ore, must pay many times that sum. The gross value of the ore of each may be the same, and yet the one who must pay a large amount for transportation realizes much less for the product of his mine than the other—as the result of the difference in expenses for freight. Two mines may be equally distant from a common market. Each produces ore carrying substantially the same value in gold and silver. The charge per ton for smelting the ore of one, because of the nature of its contents, is small; the ore from the other is refractory, and for this reason a much greater charge is made by the smelter. The gross value of the ore of each is the same, but the owners do not realize the same sum per ton for their ores. The legislature certainly did not intend to require an owner to pay a tax upon that which he never received, but on the contrary intended that the owners of producing mines should be placed upon the same plane.

The former opinion is withdrawn and the judgment of the district court will stand approved.

*Judgment affirmed.*

Decision *en banc.*

Mr. JUSTICE WHITE and Mr. JUSTICE SCOTT not participating.

Decided October 6th, A. D. 1913. Affirmed on Rehearing March 2d, A. D. 1914.