**William L. VIRDEN and Norma Virden d/b/a Chilled Fresh Fruit Company, Appellants,**

v.

**James E. SCHAFFNER, Director of Revenue, Respondent.**

No. 56893.

Supreme Court of Missouri,
Division No. 1.

June 11, 1973.

Motion for Rehearing or to Transfer to
Court En Banc Denied

July 16, 1973.

Charles F. Crews, Crews & Milliard, Kansas City, for appellants.

John C. Danforth, Atty. Gen., Walter W. Nowotny, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

FINCH, Chief Justice.

This appeal involves appellants' claim for refund of sales taxes paid under protest. We have jurisdiction because this case involves construction of the revenue laws of the state and for the additional reason that questions of constitutional construction are presented.

Appellants sell fresh fruit through vending machines which deliver one piece of fruit when a purchaser deposits 10¢. No sale exceeds 10¢ and there is no way to determine whether a person purchases more than one item. No sales tax is collected from the purchaser.

Since 1965, appellants have been filing quarterly sales tax reports showing their gross receipts as required by § 144.080 [1] and have paid under protest the tax thereon at the rate of 3%. Appellants filed a request with the Department of Revenue for a hearing to determine whether their protest was valid and whether the protested payments should be returned. A hearing was held after which the Director made Findings of Fact and Conclusions of Law which overruled appellants' protest. A petition for review was filed in the Circuit Court of Jackson County. That court entered a judgment which affirmed the decision of the Director. This appeal followed. We affirm.

Prior to 1965, the Missouri Sales Tax Act, as interpreted by this Court in Automatic Retailers of America, Inc. v. Morris, 386 S.W.2d 901 (Mo. banc 1965), was in the nature of a transaction tax under which the duty to pay the tax was on the purchaser. In so holding, this Court said, 1. c. 906: "If the legislature intended by the 1963 Amendment to impose a tax of 3% on the full gross receipts of a seller, it has failed to do so by any reasonable construction of the wording used." The tax was held not to be a gross receipts tax and the seller's liability was limited to the tax collected or required to be collected. Consequently, on transactions of less than 25¢ (on which the Act expressly excluded purchasers from paying sales tax) sellers were held not to owe any tax.

Immediately after the Automatic Retailers decision, the General Assembly, by means of emergency legislation (Laws 1965, p. 261), amended Chapter 144 and made significant charges. These included the following:

(1) Section 144.020 contained new language which stated that "A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state."

(2) A new § 144.021 was added which stated that "The purpose and intent of sections 144.010 to 144.510, is to impose a tax upon the privilege of engaging in the business, in this state, of selling tangible personal property * * *."

(3) Section 144.060 imposed a duty on purchasers to pay sales tax (to sellers) in accordance with § 144.285. That section established a bracket system under which no tax was due on sales up to 15¢, a tax of 1¢ was applicable on sales of 15¢ up to and including 54¢, a tax of 2¢ was applicable on sales of 55¢ up to and including 80¢, and a tax of 3¢ applied to sales of 81¢ up to $1.00. Similar brackets applied to successive dollar sales. However, § 144.080 provided that inability of seller to collect from purchaser would not relieve seller of his obligation to pay the tax imposed by § 144.-020. It contained language which again recognized the tax as one imposed on a person exercising the taxable privilege of selling property.

■ At the outset, appellants assert that in spite of the 1965 Amendments, the Act

1. All statutory references are to RSMo 1969 unless otherwise indicated.

continues generally to be a tax on the purchaser and that it is a gross receipts tax only as to those sellers making sales of less than 15¢. Contrary to appellants' position, this Court has already recognized that the tax imposed by Chapter 144 (as amended in 1965) is a gross receipts tax. Fabick v. Schaffner, 492 S.W.2d 737, 743 (Mo.1973). The language of the 1965 Act quoted above makes this abundantly clear. We reaffirm that the entire tax imposed by Chapter 144 is a gross receipts tax.

■ Next, appellants assert that the fact that sellers are denied the right to collect reimbursement on sales of less than 15¢ (whereas they do have that right on sales of 15¢ or more) creates an unreasonable classification in violation of Art. X, § 3, Const. of Mo., which provides that "Taxes * * * shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."

This Court said in 508 Chestnut, Inc. v. City of St. Louis, 389 S.W.2d 823, 830 (Mo.1965), " * * * There is no absolute requirement of uniformity in taxation. The only constitutional * * * requirement is that 'the taxation of subjects which fall in the same class or category be uniform.' State ex rel. Jones v. Nolte, 350 Mo. 271, en banc, 165 S.W.2d 632, 636 [7]. Uniformity of taxation does not require that all subjects of taxation be taxed, and does not mean universality. As far as the uniformity requirement is concerned the legislative body may lawfully tax the gross receipts from one phase of the operation of the hotel or motel business and not tax the gross receipts from another phase of the operation of that business, as long as the tax operates alike on all hotels and motels similarly situated and equally on all similar sources of revenue."

The 1965 Act meets the foregoing test. It "operates alike" on *all* sellers. Sales of less than 15¢ by *every* seller are excluded from those on which seller may seek reim-

bursement from the buyer. The brackets provided by § 144.285 are simple and convenient (much more workable than the old mill system which existed under an earlier Act). We hold the classification to be reasonable and not a violation of Art. X, § 3, Const. of Mo.

Appellants cite and rely on State ex rel. Transport Manufacturing & Equipment Co. v. Bates, 359 Mo. 1002, 224 S.W.2d 996 (Mo. banc 1949). In that case the Act applied a use tax to motor vehicles seating less than ten passengers but exempted vehicles seating ten or more passengers. The Court concluded that this was an arbitrary division of a natural class and could not be sustained, but at the same time recognized that the General Assembly may make reasonable classifications for tax purposes. This case does not mandate a decision for appellants in this appeal.

■ This leaves appellants' final contention that the Act violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States on the basis that whereas it purports to be a tax on the privilege of selling at retail, the true incidence of the tax has no reasonable relationship to the privilege sought to be taxed.

We conclude otherwise. In Piedmont Canteen Service, Inc. v. Johnson, 256 N.C. 155, 123 S.E.2d 582 (1962), the Supreme Court of North Carolina dealt with a very similar situation under a comparable statute. It established a tax which was held to be a privilege tax on retailers. There was provision for the retailer to pass the tax on to purchaser by a bracket system, but in any event the retailer was liable whether or not he obtained reimbursement. In holding that the Act did not result in a denial of equal protection, the court referred to the case of White v. State, 49 Wash.2d 716, 306 P.2d 230 (1957), saying, 123 S.E. 2d 1. c. 588:

" * * * The State of Washington imposes a 3% tax on retail sales. The Tax

Commission promulgated a bracket system for collection of the tax from purchasers. The bracket provided for no tax on sales of less than fourteen cents. Plaintiffs were engaged in sales through vending machines of merchandise priced at less than fourteen cents per unit, and collected no tax on its sales. Pursuant to statute the State required plaintiffs to pay 3% of its gross sales as tax. In discussing the validity and constitutionality of the sales tax law, as applied to plaintiffs, the court said:

" 'The appellants point out that the system adopted sometimes results in inequities, as in their case; and consequently, they say, they are denied the equal protection of the laws and are deprived of their property without due process. This would be true if the statute and regulations were discriminatory, or if they provided an arbitrary and unreasonable classification. Power Mfg. Co. v. Saunders, 274 U.S. 490, 47 S.Ct. 678, 71 L.Ed. 1165; Quaker City Cab Co. v. Commonwealth of Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927. But the law makes no attempt to discriminate among sellers, nor does it classify them. It is true that it classifies sales for the purpose of applying the rate, but the rate remains constant throughout the schedule, and the schedule applies alike to every seller. In its general application, it imposes no hardship. It is only when a seller chooses to sell only items which are priced at a point on the schedule where less than the full tax is to be collected that he is forced to absorb part or all of the tax, and this is the exception rather than the rule.

" 'We conclude that the statute in question requires the seller to pay the tax imposed when he fails for any reason to collect it; that the use of the bracket system authorized by the statute and adopted by the commission is reasonable and is designed to accomplish the purposes of the tax law as effectively as possible; that the law is neither arbitrary nor discriminatory and violates no constitutional right of the appellants.'

"The North Carolina law imposes the sales tax on all retailers, as a class, and applies it alike in its exactions and exemptions to all persons belonging to the prescribed class. Perfect equality in the collection of the tax by retailers from consumers is, as a practical matter, impossible as between almost any two or more retailers by reason of the differences in types of merchandise sold and selling methods."

The conclusion of the North Carolina and Washington courts that such statutory provisions are not violative of the Equal Protection Clause of the Fourteenth Amendment finds support in language used by the Supreme Court of the United States in the recent case of San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S. Ct. 1278, 36 L.Ed.2d 16. Although that case dealt with taxes imposed on real estate to support the state's school system, the language used is apropos. In its opinion the court said, 411 U.S. 1. c. 40, 93 S. Ct. at 1300: " * * * A century of Supreme Court adjudication under the Equal Protection Clause affirmatively supports the application of the traditional standard of review, which requires only that the State's system be shown to bear some rational relationship to legitimate state purposes. * * * This Court has often admonished against such interference with the State's fiscal policies under the Equal Protection Clause:

" 'The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. . . [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. . . . It has . . . been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demon-

stration that a classification is a hostile and oppressive discrimination against particular persons and classes. . . .' Madden v. Kentucky, 309 U.S. 83, 87–88, 60 S. Ct. 406, 84 L.Ed. 590 (1940)."

Subsequently, the court went on to say, 1. c. 41, 93 S.Ct. at 1301:"* * * No scheme of taxation, whether the tax is imposed on property, income or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause."

The Missouri bracket system, like that in Washington and North Carolina, creates no hardship in its general application. On sales up to and through 14¢ the seller obtains no reimbursement, but on sales from 15¢ through 32¢, he is reimbursed in greater amount than he is obligated to pay to the State. The same can be said with reference to sales of from 34¢ through 54¢ and sales of 55¢ through 66¢. This is repeated in subsequent larger sales. When averaged out, the bracket system provides a reasonable approximation of reimbursement which applies to all sellers. As the Washington court observed, 306 P.2d 1. c. 236, "It is only when a seller chooses to sell only items which are priced at a point on the schedule where less than the full tax is to be collected that he is forced to absorb part or all of the tax * * *." We hold that Chapter 144 does not violate the Equal Protection Clause of the Fourteenth Amendment.

We recognize that the case of Winslow-Spacarb, Inc. v. Evatt, 144 Ohio St. 471, 59 N.E.2d 924 (Ohio Sup.1945), reached a conclusion and result contrary to that of the North Carolina and Washington courts, but we prefer and adopt the North Carolina-Washington view.

Appellants also cite and rely on Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054 (1935). We do not consider it as governing in this case, particularly in view of the statements of the United States Supreme Court in the recent case of San Antonio School District v. Rodriguez, supra.

Judgment affirmed.

HOLMAN, P. J., and BARDGETT, J., concur.

SEILER, J., not sitting.