Doral **SMITH**, Plaintiff–Appellant,

v.

**CITY AND COUNTY OF DENVER,** Defendant–Appellee.

No. 87CA1877.

Colorado Court of Appeals, Div. III.

Aug. 31, 1989.

Rehearing Denied Oct. 12, 1989.

Certiorari Denied March 5, 1990.

Hackenthal, McNeill & Aucoin, George C. Aucoin, Lakewood, for plaintiff-appellant.

Stephen H. Kaplan, City Atty., and Darlene M. Ebert, Asst. City Atty., Denver, for defendant-appellee.

Opinion by Judge MARQUEZ.

Plaintiff, Doral Smith, appeals an adverse judgment entered after a trial to the court upon the counterclaims of the defendant, City and County of Denver (City). We affirm.

Plaintiff and several other retired police officers filed a complaint against the City and others concerning matters which, along with one of the City's seven counterclaims against plaintiff, were resolved in a separate trial. This appeal concerns certain of the City's remaining counterclaims, which involve the following facts, as summarized from the trial court's undisputed findings and the record.

In 1973, while in charge of the District 2 police station, plaintiff organized a band called Squad IV, whose members were Denver police officers. Although the band proved to be a community relations success, the City denied funding for the band but nevertheless urged plaintiff to continue operating the band and to seek private donations to fund it. Plaintiff used some of his own funds to meet band expenses.

After plaintiff was appointed division chief of the technical services division in 1975, he brought the band members from District 2 and placed them under his immediate command. The trial court found that the band members' only job as police officers was to play in the band, and plaintiff acknowledged at trial that their work was "mainly playing in the band." The City paid salaries to the band members for their on-duty services of playing in the band. Eventually, plaintiff incorporated the band as a for-profit Colorado corporation.

Pursuant to a letter from the city attorney's office, the band members were allowed to work off duty, and to keep the funds generated by any paid engagements occurring when they were off duty. However, the band also played numerous paid engagements while on duty. The proceeds from each of these on duty engagements were turned over to plaintiff or deposited into accounts which he controlled and expenditures were made from these accounts by plaintiff directly, with his approval, or at his direction.

Proceeds were used to purchase musical instruments and related supplies as well as vans for the band's use. Expenditures were also made for unspecified "public relations" activities. Numerous charges were made on the band's credit cards for meals and drinks, and funds were expended for travel outside of Denver, and for other miscellaneous expenses. The trial court also found that plaintiff took out a number of loans, which he personally secured, in the name of the band, at least one of which was a personal loan for plaintiff's use. To some extent the loans were paid back, and the vans and the band equipment were eventually turned over to the City.

In entering judgment against plaintiff, the trial court required an accounting to be made of moneys received for performances while the band members were on duty and it ordered that such moneys received and not spent on band expenses be paid over to the city treasurer. Of those moneys, which totalled $21,266.26, the court credited plaintiff for $11,337.41 of his own funds that he used to pay off the van and an additional $1,000 credit for a loan plaintiff personally made to the band. This resulted in a net amount due the City of $8,928.85. Also, the court awarded the City $300 in connection with the City's other counterclaim.

I.

Plaintiff contends that the trial court erred in finding that he was an officer of the City within the meaning of the City Charter, in finding that he was acting in his official capacity when he collected fees as director of Squad IV activities, and in requiring an accounting for proceeds received. We find no error in the trial court's resolution of these matters.

The trial court based its decision in part upon Denver City Charter § A5.11 which provides:

"All moneys arising from taxes ... fees ... and from *any other source whatsoever*, which may be collected or received by any *officer* of the city and county, or any department thereof, in his *official capacity*, for the performance of any *official duty*, shall be paid into the treasury.... No officer, deputy, clerk or *employee* of such officer, shall receive or accept any fee, compensation or payment, *other than his salary* ... for any work or service performed by him of *any official nature*, or *under color of office*,

whether performed during or after official business hours." (emphasis added) The trial court also relied upon Denver City Charter § A5.13 which provides as follows:

"Every *officer or person* collecting any fee, commission, percentage, allowance or compensation for the performance of any *official service or duty* of *any kind* or nature, or rendered in *any* official capacity, or by reason of *any* official *duty* or *employment,* shall deliver to the Manager of Revenue each business day all such collections received during the preceding business day." (emphasis added)

Construing those provisions together, the trial court concluded that the money received for performances of the band while the members of the band were on duty should have been turned over to the City. We agree with the trial court's conclusion.

■ Generally, the rules of statutory interpretation apply to municipal charters and ordinances as well as statutes. *See Reams v. City of Grand Junction,* 676 P.2d 1189 (Colo.1984); *Darnall v. City of Englewood,* 740 P.2d 536 (Colo.App.1987). When such enactments are facially unambiguous, their plain meaning should not be altered by judicial construction. *Catholic Archdiocese v. City & County of Denver,* 741 P.2d 333 (Colo.1987). Also, city charters and ordinances pertaining to the same subject matter must be construed as a whole to ascertain legislative intent and to avoid inconsistencies and absurdities. *Darnall v. City of Englewood, supra.*

■ Here, although the first sentence of § A5.11 refers only to "officers," the last sentence expressly includes *employees* within its prohibition of receiving funds, other than salaries, for services performed in their official capacities. The trial court correctly recognized that the language of § A5.13 "makes it abundantly clear that every officer *or person,* which would have to include Chief Smith whether he was an officer or an employee, must turn over the money [received] to the manager of revenue." (emphasis added) We conclude, therefore, that the intent of these provisions is to make their terms applicable to

all persons employed by the City, without regard to their status as officers or employees.

■ Further, § A5.13 applies to "the performance of *any* official service or duty of *any* kind or nature ... or by reason of *any* official duty or employment...." (emphasis added) Since the Squad IV members' main duties were playing in the band, those activities are clearly within the ambit of the Charter provisions.

■ The record amply supports the trial court's finding that plaintiff received moneys, other than his salary, for performing the duty for which he and the other police officers were being paid by the City. Therefore, the trial court correctly concluded that those moneys rightfully should have been turned over to the City.

That the band did not receive public funding is of no consequence, since the trial court credited plaintiff ·for all the funds he contributed personally. Nor is the fact that no ordinance or written directive concerning the activities of the band was ever passed by the city council or issued by plaintiff's superiors. Neither the Charter provisions nor the authorities cited by plaintiff contain such requirements.

■ We also reject plaintiff's argument that there was no legal means for the funds to be placed in the city treasury. The City's general fund consists of moneys received into the treasury "not specifically apportioned to any other fund." Denver City Charter § A5.15. It includes "all unrestricted resources except those required to be accounted for in another fund." Denver Revised Municipal Code § 20–18. Thus, the general fund was available for plaintiff to deposit the moneys received for the band's on-duty performances.

■ We find no merit in plaintiff's contention that the trial court erred in requiring an accounting of the proceeds received for on-duty performances nor in his contention that the proceeds were not public funds. The foregoing provisions are broadly drawn to include the moneys at issue here. Section A5.13 applies to *"any* fee,

commission, percentage, allowance or compensation." (emphasis added) Therefore, an accounting of the funds received by plaintiff was appropriate, and it is immaterial whether the moneys were public funds.

Because we resolve this matter based upon the City Charter provisions, we need not address the parties' arguments based on common law principles of agency.

## II.

■ We reject plaintiff's contention, regarding the City's other counterclaim, that the trial court erred in finding in favor of the City in the amount of $300 for windows.

Testimony at trial established that an employee of the Department of Office Buildings made windows and screens for plaintiff while that employee was on duty for the City and was being paid by the City at the rate of at least $100 per day. That employee testified that it took him three days to manufacture the windows and screens. The court found that a reasonable figure for the value of the employee's labor was $100 per day for each of the three days he spent manufacturing the windows and screens, for a total of $300.

The trial court's findings are supported by the evidence and, accordingly, will not be disturbed on review. *See Ault Aerial Applicators, Inc. v. Irvine,* 684 P.2d 949 (Colo.App.1984).

## III.

■ The state of the record precludes our review of plaintiff's contention that the trial court erred in allowing the defendant's counterclaims because they were identical in nature and subject matter to prior criminal charges for misappropriation of public funds and property for which he was found not guilty.

■ Since plaintiff has failed to designate and ensure the transmittal of an adequate record for purposes of review, we presume the trial court's resolution of

these issues was correct. *See Schuster v. Zwicker,* 659 P.2d 687 (Colo.1983).

Judgment affirmed.

STERNBERG and METZGER, JJ., concur.