**COMPUTER SCIENCES CORPORATION,**
Plaintiff,

v.

**Irene IBARRA, Ruben Valdez, George Kawamura, Garry Toerber, John Does I–V and Jane Does I–V, Defendants.**

Civ. A. No. 87–C–906.

United States District Court, D. Colorado.

April 27, 1988.

George D. Dikeou, Gerald A. Niederman, Denver, Colo., for plaintiff.

Gregg E. Kay, Asst. Atty. Gen., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Computer Sciences Corporation ("CSC") commenced this action under 42 U.S.C. § 1983, alleging that the defendants violated its constitutional and federal statutory rights when they terminated a contract between the plaintiff and the state of Colorado. The complaint also alleges various claims for relief under state law. Federal question and diversity jurisdiction are alleged under 28 U.S.C. §§ 1331, 1332, and 1343. Currently pending is the motion to dismiss filed by all the named defendants in this action.

The complaint alleges these facts: Plaintiff is an independent information management company. Defendant Irene Ibarra is the current Executive Director of the Colorado Department of Social Services ("CDSS"). Defendant Ruben Valdez served as CDSS Executive Director from November 1985 until December 1986. Defendant George Kawamura has served as CDSS Associate Director since about November 1985, with a brief stint as Acting Executive Director. Defendant Garry Toerber presently is the Chief of the Bureau of Medical Services for CDSS and has previously served as Contract Administrator for the Colorado Medicaid Management Information System ("MMIS"). Defendants John Does I–V and Jane Does I–V are persons who have acted in concert with one or more of the named defendants, but whose identities are unknown to the plaintiff.

In March 1985, the plaintiff entered into a contract with the CDSS and the State of Colorado whereby CSC agreed to design, develop and implement the MMIS. Under the contract, CSC became the MMIS Fiscal Agent. The initial term of the contract was scheduled to run from the date of execution until June 30, 1987, and the contract further provided for extensions by CDSS for up to two additional one-year terms.

Some time later, according to the complaint, the defendants Valdez, Toerber and Kawamura agreed among themselves to eliminate CSC as the MMIS Fiscal Agent under the then-existing contract, and to secure the award of that contract to Blue Cross and Blue Shield of Colorado. "That agreement was reached in secrecy, without benefit of public scrutiny, and without consulting other knowledgeable [CDSS] personnel who had not been recruited into Defendant's enterprise." (Complaint, para. 18.) Subsequently, the defendants Valdez and Toerber, announced to the Colorado Legislative Joint Budget Committee their previously determined plan to end CSC's Fiscal Agent work as of June 30, 1987, and to enter into a non-competitive sole source Fiscal Agent Contract with Blue Cross and Blue Shield of Colorado. (*Id.* at para. 19.) At some later point, the defendant Ibarra agreed with the other named defendants to join their ongoing conspiracy. (*Id.* at para. 21.)

The complaint additionally alleges that the named defendants, during the winter of 1987, undertook efforts to subvert the successful performance of CSC's Fiscal Agent Contract, and in March 1987 caused CDSS to terminate the existing Fiscal Agent Contract for purported default prior to the then-scheduled June 30, 1987, termination date. The complaint also asserts that the effective date of the termination was stated to be April 20, 1987. (*Id.* at paras. 22, 24, and 26.)

Plaintiff contends that the decision to terminate its contract with CDSS for default "was a predetermined undertaking

among Defendants Ibarra, Kawamura and Toerber" that was implemented "as a contrivance to reach the intended, illicit result, and an artifice whereby some $1,700,000 in funds otherwise due to CSC" for work previously performed could be diverted from CSC and used to fund the substantial new costs of purchasing sole source Fiscal Agent services from Blue Shield and Blue Cross. (*Id.* at 27.)

The complaint contains seven claims for relief. Count I alleges that the defendants deprived the plaintiff of its property interest in its contract with CDSS without due process in violation of 42 U.S.C. § 1983. Count II alleges that the defendants deprived the plaintiff of its liberty interest in its business reputation without due process also in violation of § 1983. Count III asserts that the defendants are liable pursuant to § 1983 for violating the plaintiff's federal statutory rights under various Medicaid Program statutes and regulations.

The remaining counts allege state law claims for relief. Count IV alleges a claim for intentional interference with contractual relations. Count V asserts a claim for interference with an economic advantage. Count VI alleges defamation. Finally, Count VII alleges a claim for disparagement.

In their motion to dismiss, the named defendants contend that dismissal of the complaint is mandated because: (1) the Eleventh Amendment to the United States Constitution bars this action; (2) the complaint fails to state a claim for relief under § 1983; (3) the defendants are immune from suit under the doctrine of qualified immunity; and (4) the defendants are statutorily immune from the plaintiff's state law claims. Plaintiff disputes each of these contentions. I shall address each of the named defendants' arguments in the order just presented.

As a preliminary matter, I note that in reviewing the sufficiency of a complaint when tested by a motion to dismiss, I must accept as true the complaint's allegations and view them in a light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S.

232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint must stand unless it appears beyond doubt that the plaintiff has alleged no set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

A. *Eleventh Amendment as a Bar.*

■ Defendants contend that the Eleventh Amendment bars the plaintiff's claims against them. The Eleventh Amendment provides:

"The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or subjects of any Foreign State."

Although the plaintiff is suing the individual defendants and not the state, the defendants insist that the Eleventh Amendment still operates to bar this lawsuit because "[w]hen an action extends to agencies and officials of the state and in essence seeks recovery against the state, the suit is barred." (Motion, at 3) (citing *Ford Motor Co. v. Dep't of Treasury of State of Indiana,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).

In *Ford Motor Co.* the Court held that if a lawsuit in essence seeks recovery from the state, the state is the real party in interest and is entitled to invoke its sovereign immunity from suit, even though individual officials are the named defendants. *See Griess v. Colorado,* 624 F.Supp. 450 (D.Colo.1985) (correctional officers had absolute derivative Eleventh Amendment immunity from a former inmate's civil rights action arising out of the defendant's failure to consider pre-sentence time served in computing good-time credit because any award would be paid out of the state's coffers).

Defendants assert that because they are employees and officers of the CDSS, the plaintiff's claims are in effect against the alter ego of the state and are barred. They add that the plaintiff has "failed to allege any acts of the defendants outside the

scope of their employment or which would constitute willful or wanton actions," and that as a result, the indemnification provision of Colo.Rev.Stat. § 24–10–110 would render any judgment against the defendants a judgment against the state. (Motion, at 3–4.)[1]

I disagree with the defendants' contention that the plaintiff has failed to allege that the defendants acted willfully and wantonly. Taking the complaint's allegations as true, as I must on a motion to dismiss, I note that paragraph 30 of the complaint alleges that "Defendants' conduct has been malicious, tainted by extreme recklessness or bad faith, and willful and wanton in nature." Moreover, several of the complaint's allegations describe conduct by the defendants that would support the assertion made in paragraph 30. *See* Plaintiff's opposition brief, at 3 ("Plaintiff has alleged that Defendants' wrongful actions either exceeded the scope of their authority or constituted a gross abuse of their power"). Additionally, § 24–10–110 precludes state indemnification of public employees for damages based upon willful and wanton misconduct.

If the plaintiff successfully proves that the defendants acted willfully and wantonly, the state would not be required to indemnify the defendants. I therefore conclude that for purposes of the defendants' motion to dismiss, the plaintiff's claims are not barred by the Eleventh Amendment.

### B. *42 U.S.C. § 1983.*

■ Defendants argue that the complaint must be dismissed for failure to state a claim under § 1983. In order to state a claim under § 1983, the complaint must meet two requirements. First, it must allege that the defendants deprived the plaintiff of a right secured by the constitution or laws of the United States. Second, it must assert that the defendants acted under "color of state law" in infringing the protected rights. *Clouser v. City of Thornton,* 676 F.Supp. 228 (D.Colo. 1987); *see Skadegaard v. Farrell,* 578 F.Supp. 1209, 1216 (D.N.J.1984) (it is settled law that § 1983 does not itself create a new substantive right. Rather, it merely provides a remedy for violations of federally granted or guaranteed rights).

The complaint alleges that the defendants violated the plaintiff's rights secured by both the federal constitution *and* federal laws. Specifically, the plaintiff contends that the defendants deprived it of its property and liberty interests without due process in violation of the Fourteenth Amendment due process clause, and that the defendants violated statutes and regulations concerning implementation of the Social Security Act. 42 U.S.C. §§ 1302, 1396, 1396a, and 1396b; 45 CFR §§ 95.601, 95.613, and Part 74. (*See* Complaint, at 9.)[2]

#### 1. Federal Statutory Rights.

■ Plaintiff contends that it "possessed valuable rights to participate in an open and competitive 'market' for Medicaid Fiscal Agent Services, which is defined and protected by applicable federal statutes and regulations." (Opposition brief, at 7) (*see* Complaint, at paras. 51–54.)[2] In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Court construed § 1983 as authorizing suits to re-

---

1. Section 24–10–110 provides that a public entity shall be liable for claims against one of its employees that arise out of injuries sustained from an act or omission of such employee during the performance of his or her duties and within the scope of his or her employment. This section does not apply, however, if the act or omission was willful and wanton.

2. According to the complaint:

"The [Secretary of Health and Human Services] has outlined the overall process for federal approval of state MMIS activities in regulations codified at 45 C.F.R. § 95.601 *et seq.* 45 C.F.R. § 95.613 specifies in turn that 45 C.F.R. Part 74, Subpart P will define the mandatory procurement process that must be used in awarding a contract to a company that provides claims processing for the state as MMIS Fiscal Agent.

. . . . .

"These federal regulations implementing the Social Security Act provide that maximum free and open competition should be utilized in awarding a Fiscal Agent contract, that state procurement procedures shall not restrict or eliminate competition, and further specify that states must not restrict such contractual competition by the promotion of noncompetitive practices."

dress violations by state officials of rights created by federal statutes.

Defendants, however, argue that the plaintiff cannot state a claim for relief under § 1983 for their alleged violation of the Medicaid statutes and regulations because:

"There is no section 1983 cause of action where the federal statute is merely regulatory and creates no enforceable rights, privileges or immunities or where the statute provides a comprehensive and exclusive remedy for the statute's enforcement, expressly or impliedly precluding alternative actions for enforcement." (Motion, at 5 (citing *Middlesex Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)).

The Court in *Middlesex* recognized that the availability of § 1983 to enforce federal statutory rights was subject to two "exceptions" indicating affirmative Congressional intent to preclude enforcement of the statute through § 1983: (1) Congress' explicit or implicit foreclosure of private enforcement in the statutory scheme itself; and (2) Congress' failure to establish "enforceable rights" in the relevant statutory provision. *Id.* at 19, 101 S.Ct. at 2626; *Samuels v. District of Columbia*, 770 F.2d 184, 194–95 (D.C.Cir.1985).[3] Thus the plaintiff can maintain its § 1983 claim for violation of the Social Security Act provisions unless Congress either expressly or impliedly foreclosed private enforcement, or failed to establish enforceable rights in those provisions.

In order to establish an implied right of action under a federal statute, a plaintiff bears a relatively heavy burden of demonstrating that Congress affirmatively or specifically contemplated private enforcement when it passed the relevant statute. However, as noted by the D.C.Circuit in *Samuels, supra,* "statutory section 1983 claims differ significantly from implied pri-

vate rights of action." 770 F.2d 184, 194. The court explained:

"Section 1983 ... itself creates an *express* federal cause of action against state officials for violations of federal law, and section 1983 plaintiffs do not suffer the burden of demonstrating that Congress specifically intended to preserve the ability of private parties to enforce the relevant provisions of federal law against those officials.... Instead, Congress is, in effect, presumed to legislate against the background of section 1983 and thus to contemplate private enforcement of the relevant statute against state and municipal actors absent fairly discernible congressional intent to the contrary." *Id.* (Emphasis in original.)

*See Middlesex, supra,* 453 U.S. at 21 n. 31, 101 S.Ct. at 2627 n. 31 ("we do not suggest that the burden is on a plaintiff to demonstrate congressional intent to preserve § 1983 remedies").

Notably, the defendants in their motion to dismiss do not furnish any authority for their contention that the *Middlesex* exceptions apply to the pertinent Medicaid provisions. Thus it is doubtful whether they have met their burden of overcoming the presumption that Congress contemplated enforcement of the Medicaid Act provisions through a § 1983 action. Nevertheless, I need not decide whether a § 1983 action can be maintained to enforce rights established by the Social Security Act provisions and the regulations implementing those provisions because of my conclusion, *infra,* that the defendants are entitled to qualified immunity with respect to the plaintiff's claim that they violated CSC's federal statutory rights.

2. Property Interest.

The complaint alleges that the defendants' "agreement to cause CSC's contract to be terminated for alleged default and their subsequent acts purporting to termi-

---

**3.** In *Samuels, supra,* the court said:

"As an example of the first such exception, the Court has stated that '[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.'.... As an

example of the second, the Court has suggested that a section 1983 action will not lie to enforce vague policy actions of federal statutes intended only to advise, rather than to mandate, a particular course of conduct." (citations omitted). 770 F.2d at 195.

nate the contract as of April 20, 1987" constituted a wrongful deprivation of its property interest in the contract. (Complaint, para. 35.) Defendants argue that the plaintiff's § 1983 claim for deprivation of its property interest must be dismissed because: (1) the plaintiff had no vested property right in its contract with CDSS; and (2) even if the plaintiff had a property interest in its contract with CDSS, there has been no due process violation because constitutionally sufficient grievance procedures were available to the plaintiff at a meaningful time. (Motion, at 5–7.)

In response, the plaintiff contends that its contract with CDSS created a property interest protected by the Fourteenth Amendment, and that the post-deprivation grievance procedures available to the plaintiff to challenge the termination were constitutionally inadequate.

■ For purposes of a § 1983 action, whether a property interest exists is dependent on state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed. 2d 684 (1976). The Supreme Court has stated that:

> "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and support claims of entitlement to those benefits." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1978).

"Ultimately, the question is whether the plaintiff has a 'legitimate claim of entitlement' to the benefit alleged to constitute a property interest." *Gomez v. City of Sheridan,* 611 F.Supp. 230, 233 (D.Colo.1985) (citing *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709).

■ Defendants assert that the contract between CDSS and CSC was terminable at the sole discretion of CDSS. Defendants, however, provide no support for this contention. Moreover, the contract expressly stated that it was for a specified term, and

therefore, if CDSS had the power to unilaterally terminate the agreement, the contract probably would have been unenforceable for lack of consideration. Yet the defendants do not suggest in their motion to dismiss that the contract between CDSS and CSC was invalid.

Taking the complaint's allegations as true, I conclude for purposes of this motion to dismiss that the contract between CDSS and the plaintiff created a "mutual understanding" that provided the basis for the plaintiff's property interest in the contract.

■ Alternatively, the defendants contend that even if the plaintiff had a property interest in the contract with CDSS, that the plaintiff has been afforded ample procedural due process through opportunities to protest the contract's premature termination. They concede that some form of hearing is required before an individual is finally deprived of a property interest, but insist that the plaintiff's due process rights, if any, were satisfied because CSC was entitled to a post-deprivation administrative hearing on the declaration of default on the contract, and was entitled to seek judicial review of that decision.

Apparently, the plaintiff appealed CDSS' decision to declare the contract in default to the Director of the Colorado State Purchasing Department. The director found in favor of CDSS and the plaintiff has sought judicial review of that decision in the state district court in and for the City and County of Denver, Colorado. (Defendants' motion, at 2.) Additionally, the plaintiff has counterclaimed against the CDSS under a theory of negligent administration of a contract in another suit that is presently pending in the state district court in and for the City and County of Denver, Colorado. (*Id.*)

In *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), the Court observed that resolution of the issue of whether the administrative procedures provided are constitutionally sufficient "requires analysis of the governmental and private interests that are affected." Specifically, the Court listed three factors that should be considered in determining

whether the available grievance procedures were sufficient:

"[1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Id.* at 332, 96 S.Ct. at 901.

Although the defendants cite *Mathews* in their motion to dismiss, they do not provide any case or authority that has applied the *Mathews* factors to the kind of situation presented here. Indeed, the defendants themselves do not even apply the *Mathews* factors to this case. Moreover, they do not even allege in their motion that the state would be overly burdened by providing a pre-termination hearing before a declaration of default on a contract.

In contrast, CSC alleges that its interests were prejudiced by the lack of a pre-termination hearing. Specifically, the plaintiff argues that the post-deprivation process relied on by the defendants is "clearly inadequate" because "[g]iven the sensitive, highly competitive arena of governmental contracting on a nationwide basis, CSC will bear the stigma imposed by the [d]efendants far into the future." (Opposition brief, at 7.)

This case is somewhat analogous to *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985), where the Court held that a state employee with a constitutionally protected property interest in employment is entitled to a hearing *before* being discharged. The Court there reasoned that the employee's interest in retaining his job and in avoiding an erroneous termination outweighed the government's interest in immediate termination of an unsatisfactory employee.

Similarly, I conclude that CSC's interest in avoiding improper termination and the resulting negative publicity outweighed any burden imposed on the state by requir-

ing it to provide some type of pre-termination hearing as a means of assuring the fundamental fairness that is the essence of procedural due process. Taking the complaint's allegations as true, I therefore conclude for purposes of this motion to dismiss that CSC was entitled to a hearing before its constitutionally protected property interest in its contract with the state was unilaterally terminated by the state.

### 3. Liberty Interest.

The complaint alleges that the defendants publicized certain false information impugning the plaintiff's "good name, reputation and integrity, including (but not limited to) the allegations that CSC had harmed the Colorado Medicaid Program, had caused the state to lose enormous sums of money through its supposed derelictions, and had defaulted in its obligations to the state." (Complaint, para. 41.) Plaintiff contends that the above-described conduct deprived it of its liberty interest without due process because: (1) the defendants' stigmatization of the plaintiff will "adversely affect CSC's ability to secure further contracts with governmental bodies of the type" that CSC had with CDSS and the State of Colorado; and (2) the defendants denied CSC "any meaningful hearing or other meaningful opportunity at which the [p]laintiff could effectively defend itself against the stigma prior to being tainted thereby." (*Id.* paras. 43–44.)

Defendants assert that the complaint fails to state a claim for relief under § 1983 for deprivation of a liberty interest because: (1) any "harm or injury to an interest in reputation as plaintiff has pled, does not alone result in a constitutional violation"; (2) the defendants have not affected the reputation of the plaintiff; (3) if the plaintiff's reputation was affected by the defendants, "the defendants are not liable since there is a tort privilege of publication when made in the interest of others"; (4) there is also a constitutional privilege to publish matters of public concern that would include the management and operation of the Medicaid system by the CDSS; and (5) even if a constitutionally protected interest is found, the post-deprivation pro-

cedures available to the plaintiff were constitutionally adequate.

I am unpersuaded by any of the defendants' contentions. First, the plaintiff has alleged more than some intangible harm or injury to its general reputation. Rather, the complaint alleges that CSC's economic interests have been injured by the defendants' conduct, and therefore adequately alleges that tangible interests were injured by the purported stigmatization. *See Koerpel v. Heckler*, 797 F.2d 858 (10th Cir.1986) (for purposes of due process, reputational damage alone, no matter how egregious, is insufficient to support claim of liberty deprivation; some other tangible interest must also be involved).

Second, the defendants cannot prevail on their motion to dismiss by simply contending that CSC's economic reputation was not injured by the defendant's conduct. This is a question of fact, and the facts alleged in the complaint must be taken as true when ruling on a motion to dismiss.

Third, the question of whether common law and constitutional privileges shield the defendants from liability under § 1983 for deprivation of the plaintiff's liberty interest cannot be properly resolved at this time. Any privilege available to the defendants would not be applicable if the defendants acted maliciously in stigmatizing the plaintiff, and the complaint alleges that the defendants' conduct "has been malicious, tainted by extreme recklessness or bad faith, and willful and wanton in nature." (Complaint, para. 30.) Thus, taking the complaint's allegations as true, the privileges relied on by the defendants are inapplicable.

Defendants' only remaining argument in support of dismissing the § 1983 liberty interest claim is that the post-deprivation procedures available to the plaintiff satisfied due process requirements. This argument, however, is just as unpersuasive here as it was with respect to the § 1983 claim for deprivation of the plaintiff's property interest. Therefore, taking the complaint's allegations as true, I conclude for purposes of this motion to dismiss that the named defendants did violated the plaintiff's Fourteenth Amendment liberty interest.

### C. *Qualified Immunity.*

Defendants next argue that the complaint must be dismissed because, as officials, they are immune from being sued. Under the doctrine of qualified immunity, "government officials performing discretionary functions ... are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See Davis v. Scherer*, 468 U.S. 183, 194 n. 12, 104 S.Ct. 3012, 3019 n. 12, 82 L.Ed.2d 139 (1984) (immunity standard of *Harlow* applies in § 1983 actions). The United States Supreme Court has not fully explained what it meant by the phrase "clearly established statutory or constitutional rights," but it has ruled that government officials are not "charged with predicting the future course of constitutional law." *Pierson v. Ray*, 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967).

■ When the affirmative defense of qualified immunity is raised, the plaintiff has the burden of convincing the court that its federal constitutional or statutory rights were clearly established at the time of the questioned conduct. *Id.*, 468 U.S. at 197, 104 S.Ct. at 3020–21; *Lutz v. Weld County School Dist. No. 6*, 784 F.2d 340, 342–43 (10th Cir.1986); *Clouser, supra*, 676 F.Supp. 228. Where a plaintiff fails to meet that standard, the court is required to enter judgment in favor of defendants who have pleaded the immunity defense. *Lutz*, 784 F.2d at 343.

■ Plaintiff contends that the defendants are not entitled to qualified immunity because: (1) their wanton and conspiratorial acts were clearly beyond the scope of any legitimate discretionary authority; (2) they violated clearly established constitutional rights; and (3) the defendants have at most raised factual issues not susceptible to resolution on a motion to dismiss.

With respect to the plaintiff's contention that the defendants are not entitled to assert qualified immunity because they acted willfully, wantonly and maliciously, I note that the Court in *Harlow, supra,* rejected consideration of such subjective factors for purposes of deciding whether qualified immunity applies. The Court specifically stated that "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." 457 U.S. at 817–18, 102 S.Ct. at 2737–38. The Court reasoned that:

> "Judicial inquiry into subjective motivation ... may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be particularly disruptive of effective government." *Id.* at 817, 102 S.Ct. at 2737–38 (footnotes omitted).

Thus the relevant issue that I must decide is whether the federal constitutional and statutory rights asserted by the plaintiffs were clearly established at the time of the defendants' conduct. *Clouser, supra,* 676 F.Supp. 228.[4] Plaintiff contends that the "law is well enough established regarding the existence and deprivation of civil rights that reasonable persons would not have acted as egregiously as the defendants." (Opposition brief, at 9.) Yet while the plaintiff argues in its opposition brief that the constitutional rights violated by the defendants were "clearly established" when the defendants acted, it does not allege that its federal statutory rights under

the Social Security Act were likewise "clearly established."

Nor does the plaintiff provide any case or authority in its opposition brief in support of the argument that its federal statutory rights were clearly established at the time of the defendants' conduct. Indeed, I conclude that the plaintiff's purported statutory rights under the Social Security Act provisions and the regulations implementing those provisions were not clearly established at the time of the defendants' conduct. As discussed previously in this order, *supra,* there is a genuine question as to whether those provisions and regulations provide the plaintiff any enforceable rights. Where a genuine question exists as to whether a statute creates a right, the putative right in question can hardly be regarded as being "clearly established." *Cf. Clouser,* 676 F.Supp. 228 (qualified immunity shielded city officials from liability under the Rehabilitation Act because of the uncertainty surrounding the Act's application to city department employing plaintiff).

Similarly, the plaintiff has failed adequately to allege that the defendants violated its clearly established constitutional rights. Taking the complaint's allegations as true, the defendants unilaterally and improperly terminated CSC's contract with CDSS, thereby depriving the plaintiff of its property interest in the contract. Additionally, the complaint alleges that the defendants' publication of the plaintiff's purported default deprived the plaintiff of its constitutionally protected liberty interest.

---

**4.** I am tempted to agree with the plaintiff that the issue of qualified immunity is not ripe for disposition on the defendants' motion to dismiss. In *Harlow* the Court stated that *"[o]n summary judgment,* the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time the action occurred." 457 U.S. at 818, 102 S.Ct. at 2738 (emphasis added).

Further evidence in *Harlow* of the Court's suggestion that the issue of qualified immunity need not be decided until the summary judgment stage of the proceedings is the Court's language that "judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and

emotions," and that "[t]hese variables explain in part why questions of subjective intent so rarely can be decided by *summary judgment."* Id. at 816, 102 S.Ct. at 2737 (emphasis added). Yet postponing a ruling on the issue of qualified immunity until the summary judgment stage would be inconsistent with the Court's admonition in *Harlow* that no discovery should be allowed until the court has determined whether the applicable law was "clearly established" when the defendants' conduct or omission occurred. 457 U.S. at 818, 102 S.Ct. at 2738.

Defendants do not appear to dispute, and I conclude, that the plaintiff's state law claims for relief allege violations of clearly established state laws.

As mentioned earlier, however, there are circumstances in which a state may constitutionally deprive persons of liberty and property interests as long as adequate due process is provided. While I have concluded, *supra*, that the Fourteenth Amendment due process clause required the defendants to provide the plaintiff with a hearing prior to the defendants' contract termination and publication of the plaintiff's purported default, the plaintiff has not adequately alleged that such a due process requirement was "clearly established" when the defendants acted.

As I have also previously discussed, under *Mathews v. Eldridge, supra,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, a court must balance competing interests in deciding whether the a person who alleges deprivation of a federal constitutional or statutory right was entitled to a pre-deprivation hearing. Yet as noted by the court in *Benson v. Allphin,* 786 F.2d 268 (7th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986), where the outcome of a case depends on balancing competing interests, the law's "application is so fact dependent that the law can rarely be said to be 'clearly established.'" *Id.* at 276. The court added that under *Harlow, supra,* "whenever a balancing of interests is required, the facts of the existing case law must closely correspond to the contested action before the defendant official is subject to liability...." *Id.* The court then held that because of the need to balance competing interests in determining whether the First Amendment was violated by state officials' actions in obtaining the discharge of an employee, the officials were entitled to qualified immunity since it was not clearly established at the time of the employee's discharge whether his statements were entitled to constitutional protection. *See Whitcomb v. Jefferson County Department of Social Services,* 685 F.Supp. 745 (D.Colo.1987) (local officials entitled to qualified immunity because out-

come of plaintiff's civil rights complaint would depend on a balancing of competing interests).

Here, as in *Benson,* the outcome of the plaintiff's claims for constitutional deprivations depends on a balancing of competing interests. Specifically, it depends on a balancing of the three interests listed in *Mathews, supra.* Plaintiff has not cited any case involving similar facts where a court has held that an aggrieved plaintiff corporation was entitled to a pre-termination or pre-publication hearing. Thus the plaintiff has not alleged that the facts of any prior existing case closely correspond to the facts here, or raise the procedural due process issue presented here. Therefore, I conclude that the plaintiff has failed adequately to allege that the named defendants violated its "clearly established" constitutional rights when they failed to provide CSC with a pre-termination, pre-publication hearing.

Named defendants are therefore entitled to the shield of qualified immunity and the plaintiff's federal constitutional and statutory claims against them must be dismissed.

### D. *Statutory Immunity.*

█ The complaint alleges state law claims for intentional interference with contractual relations, interference with prospective economic advantage, defamation and disparagement.[5] Defendants argue that these claims must be dismissed because they are barred by the Colorado Governmental Immunity Act, Colo.Rev.Stat. §§ 24–10–101 *et seq.*[6]

Section 24–10–106 provides that "a public entity shall be immune from liability in all claims for injury, which are actionable in tort except as provided otherwise in this section." Defendants argue that the list of specific waivers of sovereign immunity in § 24–10–106 does not include waivers for the state law tort claims alleged in the instant complaint.

Defendants appear to be relying on the wrong statutory immunity provision. Sec-

---

5. Although federal question subject matter jurisdiction does not exist because I have dismissed the plaintiff's federal claims for relief, diversity jurisdiction is also alleged to exist.

6. I must apply Colorado law to the plaintiff's state law claims. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

tion 24–10–106 applies to "public entities," whereas the plaintiff is suing individual public employees. Presumably, the defendants are contending that Colo.Rev.Stat. § 24–10–118 provides them statutory immunity from the plaintiff's tort law claims. Subject to important exceptions, that section affords a public employee immunity from tort actions arising out of his or her acts or omissions that occurred within the scope of his or her official duties. One of those exceptions, however, is where the employee has willfully or wantonly injured the plaintiff. The complaint in the present action alleges that the defendants acted willfully and wantonly to injure the plaintiff. (Complaint, para. 30.) Therefore, at least for purposes of this motion to dismiss, the named defendants are not entitled to the protection of the Colorado Governmental Immunity Act.[7]

Accordingly, IT IS ORDERED that:

(1) The named defendants' motion to dismiss the complaint on the ground that the Eleventh Amendment bars this action is denied;

(2) The named defendants' motion to dismiss the complaint for failure to state a claim for relief under 42 U.S.C. § 1983 is denied;

(3) The named defendants' motion to dismiss the plaintiff's federal constitutional and statutory claims because of qualified immunity is granted;

(4) The named defendants' motion to dismiss the state law claims because of state statutory and official immunity is denied; and

(5) Plaintiff's claims for relief under § 1983 for violation of the plaintiff's constitutional and statutory rights are dismissed as against the named defendants.

---

7. Nor are the defendants entitled, at least for purposes of this motion to dismiss, to the protection of Colorado's official immunity doctrine. The complaint alleges that the defendants acted outside the scope of their authority, and the Colorado Supreme Court has ruled that "an official has no immunity for actions outside his authority." *Trimble v. City and County of Denver,* 697 P.2d 716, 729 (Colo.1985).