**CHERRY CREEK AVIATION, INC., a Colorado corporation, d/b/a Mountain Air Express, Plaintiff–Appellant,**

v.

**CITY OF STEAMBOAT SPRINGS, Steamboat Springs Airport Authority, Anthony Lettunich, Kevin Bennett, Mary T. Brown, Paula Cooper Black, William B. Martin, Carol Booth Fox, John O. Ross, and Richard Tremaine, Counterclaimants and Defendants–Appellees.**

No. 96CA1669.

Colorado Court of Appeals, Div. II.

April 16, 1998.

Rehearing Denied May 28, 1998.

Linda M. Cote, Denver, for Plaintiff–Appellant.

Hall & Evans, L.L.C., David R. Brougham, Denver; Lettunich & Vanderbloemen, L.L.C., Anthony B. Lettunich, Steamboat Springs, for Counterclaimants and Defendants–Appellees.

Opinion by Judge TAUBMAN.

Plaintiff, Cherry Creek Aviation, Inc., d/b/a/ Mountain Air Express (Cherry Creek), appeals the summary judgment entered in favor of defendants, City of Steamboat Springs (the City), Steamboat Springs Airport Authority, Anthony Lettunich, Kevin Bennett, Mary T. Brown, Paula Cooper Black, William B. Martain, Carol Booth Fox, John O. Ross, and Richard Tremaine, dismissing its claims for breach of contract and equitable relief and its constitutional claims under 42 U.S.C. § 1983 (1994). We affirm.

Cherry Creek responded to a request for proposal issued by the City for a fixed base operator for the Steamboat Springs Airport, a public airport authority. A fixed base operation is one that requires the operator to provide specific facilities, services, equipment, and personnel to meet the requirements of operation for the airport.

Negotiations ensued between the city attorney, the city manager, the chair of the airport authority, and Cherry Creek. In 1993, the City and Cherry Creek entered into an agreement entitled "Use and Lease Agreement," drafted by the City, in which the City was to lease real property to Cherry Creek and Cherry Creek would provide fixed base operations for the airport. More specifically, the agreement required Cherry Creek to provide, among other things, aircraft tiedown services, fuel and oil, aircraft airframe and engine repair, facilities for flight planning, and aircraft storage and hangar facilities. The term of the agreement was three years, beginning December 1, 1993, and terminating on November 30, 1996. The agreement granted Cherry Creek an option to extend for thirty years.

The City is a home rule municipality. Steamboat Springs City Charter § 13.6 provides in pertinent part:

The Council, by ordinance, may lease for such a term as the Council shall determine, any real property to any person, firm or corporation, public or private. The effective date of any sale or lease must be at least thirty (30) days after passage by Council, and Council shall not sign any such contractual document prior to the thirty (30) day period.

Despite this provision, the City Council did not adopt the lease by ordinance; however, during a city council meeting on November 16, 1993, there was "consensus" to approve all items relating to various airport contracts, including the one at issue.

In 1994, a new city attorney determined that there were few performance standards to which Cherry Creek could be held in its fixed base operation and that the lease was unfavorable to the City. At that time the City discovered that the agreement had not been approved by ordinance. Thereafter, the City Council, after a public meeting on December 13, 1994, determined that it would not ask the city attorney to prepare an ordinance ratifying and affirming the lease, but rather, instructed the city attorney to declare the lease invalid.

Cherry Creek subsequently instituted this action and the City responded with a counterclaim requesting that the trial court declare the lease invalid. In the interim, Cherry Creek remained on the premises and continued operations.

The trial court concluded that the failure to comply with the charter provision requiring the City Council to adopt by ordinance the lease with Cherry Creek rendered the entire agreement invalid, and precluded all of Cherry Creek's claims, legal and equitable, against the City.

In a separate action for Forcible Entry and Detainer (FED), initiated after the summary judgment ruling and later consolidated therewith, the City sought to evict Cherry Creek from the premises. After Cherry Creek voluntarily vacated the premises pursuant to stipulation, the trial court dismissed the FED action with prejudice. No appeal was taken.

Cherry Creek appeals here the trial court's dismissal on summary judgment of its claims for affirmative relief regarding the Use and Lease Agreement.

Summary judgment is a drastic remedy and should be granted only upon a clear showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.,* 759 P.2d 1336 (Colo.1988).

When reviewing a motion for summary judgment, we must give the nonmoving party the benefit of all favorable inferences that may be drawn from the facts. *Holland v. Board of County Commissioners,* 883 P.2d 500 (Colo.App.1994). Also, review of a judgment granting a motion for summary judgment is *de novo. Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

### I. Breach of Contract

■ Cherry Creek first contends that the trial court erred as a matter of law in concluding that the contract was not a valid and enforceable agreement between the parties. More specifically, Cherry Creek argues that the Airport Authority had authority to enter into the Use and Lease Agreement pursuant to Steamboat Springs Municipal Ordinance 1065, § 4(d), thereby creating an enforceable contract even though the City Council did not adopt it by ordinance. The City contends that because the lease was not adopted by ordinance in the manner prescribed by the City Charter, the lease agreement is null and void. We agree with the City.

■ Contracts executed by municipal corporations are void when there is a failure to comply with the mandatory provisions of the applicable statutes or charters. *See Swed-*

*lund v. Denver Joint Stock Land Bank,* 108 Colo. 400, 118 P.2d 460 (1941). *See also* 10 E. McQuillin, *Municipal Corporations* § 29.02 (3d ed.1990).

Steamboat Springs Municipal Ordinance No. 1065, formally codified as Steamboat Springs Revised Municipal Code § 2–275, creating the Steamboat Springs Airport Authority, provides in pertinent part:

> The Authority ... is hereby declared to be a political subdivision of the City, exercising essential governmental powers for a public purpose and is hereby authorized:
>
> ....
>
> (d) to enter into contracts and agreements affecting the affairs of the Authority;
>
> (e) to purchase, trade, exchange, acquire, buy, sell, and otherwise dispose of personal property and any interest therein, to lease to or for the benefit of the Authority real or personal property, to purchase, acquire or buy real property and any interest therein *and to recommend to the City Council the trade, exchange, sale or other disposition of real property and any interest therein* .... (emphasis added)

■ Rules of statutory construction apply to municipal charters and ordinances as well as to statutes. Courts should interpret municipal enactments in accordance with their plain and ordinary meaning. Additionally, city charters and ordinances pertaining to the same subject matter must be construed as a whole to ascertain legislative intent and to avoid inconsistencies and absurdities. *Smith v. City & County of Denver,* 789 P.2d 442 (Colo.App.1989).

■ It is the duty of the trial court to adopt, when possible, a construction that does not invalidate an ordinance. *Hiatt v. City of Manitou Springs,* 154 Colo. 525, 392 P.2d 282 (1964).

Further, § 2–4–205, C.R.S.1997, provides:

> If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision

prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

Here, as noted, Steamboat Springs City Charter § 13.6 requires that the City Council adopt by ordinance any lease of city property. Additionally, Steamboat Springs Municipal Ordinance 1065, 4(e), pertains to the power of the Authority regarding the disposition of real and personal property. Because the two enactments pertain to the same matter, the disposition of real property, they must be construed together to avoid any inconsistencies.

Further, Municipal Ordinance 1065, § 4(d), which gives the Airport Authority the general power to contract regarding affairs of the Authority, is followed by § 4(e), the more specific provision regarding the Authority's power to contract regarding real and personal property. Thus, to give effect to both provisions, § 4(e) must be construed so as to allow the Airport Authority only to *recommend* to the City Council a proposed disposition of real property owned by the City.

Significantly, § 4(e) expressly authorizes the Authority to act without recommendation to the City Council only when: (1) disposing of personal property; (2) entering into a lease "to or for the benefit of" the Authority, i.e., where the Authority is engaged in a transaction as a lessee; or (3) acquiring real property. Cherry Creek does not contend otherwise.

This interpretation of § 4(e) is both consistent with the requirements of the City Charter and gives effect to both § 4(d) and 4(e) of the ordinance. Thus, we conclude that, when read as a whole, the City Charter and Municipal Ordinance 1065 require that any lease of city property by the Authority must be adopted by the City Council pursuant to city ordinance.

It is undisputed that the City Council did not pass an ordinance adopting the lease agreement with Cherry Creek. Accordingly, that lease is void. Therefore, the trial court correctly concluded that Cherry Creek cannot assert a claim for breach of contract and properly dismissed such claim by summary judgment.

## II. Equitable Relief

Cherry Creek next contends that the trial court erred in concluding as a matter of law that the operation of the municipal airport is a governmental, rather than proprietary, function and, therefore, also erred in dismissing on summary judgment Cherry Creek's claims for equitable relief. We do not agree with either contention.

### A. Governmental Function

■ Cherry Creek argues that the trial court erred as a matter of law in concluding that the operation of the municipal airport is a governmental function. We are not persuaded.

■ When acting in a proprietary capacity, a municipal corporation is subject to the same rules of business dealing which apply to a private party. *See Colowyo Coal v. City of Colorado Springs*, 879 P.2d 438 (Colo.App. 1994) (governmental/proprietary distinction is no longer critical in tort liability because of Governmental Immunity Act, but remains important in other contexts).

Colorado courts have recognized in several contexts the distinction between the actions of a city in its governmental, or legislative capacity, in which it is a sovereign and governs its citizens, and the actions of a city in its proprietary capacity, in which it acts for the private advantage of its residents and for itself as a legal entity. *Colowyo Coal v. City of Colorado Springs, supra.*

■ Thus, a municipal corporation performs governmental functions when operating for the public good generally, but performs proprietary functions when operating for the peculiar benefit and advantage of the citizens of the municipality. *City of Pueblo v. Weed*, 39 Colo.App. 415, 570 P.2d 15 (1977), *rev'd on other grounds*, 197 Colo. 52, 591 P.2d 80 (1979).

Section 41–4–101, C.R.S.1997, provides:

The acquisition of any lands for the purpose of establishing airports or other air navigation facilities; the acquisition of air-

port protection privileges; the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment, and *operation of airports* and other air navigation facilities and the exercise of any other powers granted in this part 1 to any county, city and county, city, or town are hereby declared *to be public governmental functions,* exercised for a public purpose, and matters of public necessity and such lands and other property, easements, and privileges acquired and used in the manner and for the purposes enumerated in this part 1 are hereby declared to be acquired and used for public purposes and as a matter of public necessity. (emphasis added)

The Colorado courts have reached different conclusions as to whether a municipal airport functions in a proprietary or governmental capacity. For example, in *Rocky Mountain Motor Co. v. Airport Transit Co.*, 124 Colo. 147, 235 P.2d 580 (1951), the supreme court determined that the City of Denver, in establishing its municipal airport and assigning the operation of the airport to Denver's Department of Improvements and Parks, was acting in a proprietary, rather than a governmental, capacity. However, the supreme court noted that, in 1945, the General Assembly had, pursuant to the statutory predecessor to § 41–4–101, declared the operation of publicly owned airport facilities to be a governmental function.

Similarly, in *Westrac, Inc. v. Walker Field*, 812 P.2d 714 (Colo.App.1991), another division of this court held that an airport authority was acting in a proprietary capacity, rather than a governmental capacity, in adopting a fee structure for the privilege of an off-site car rental agency to conduct business at the airport.

In contrast, in *Pueblo Aircraft Service, Inc., v. City of Pueblo*, 498 F.Supp. 1205 (D.Colo.1980), *aff'd*, 679 F.2d 805 (10th Cir. 1982), the federal district court, relying on § 41–4–101, concluded that because the State of Colorado had specifically authorized a city to acquire and operate a municipal airport for public purposes and matters of public necessity, the City of Pueblo was acting in its governmental capacity in its dealings with

Pueblo Aircraft Service, a fixed base operator. The Tenth Circuit, affirming the district court's determination, concluded: "Clearly, City's airport is one operated for the benefit of the general public and not for the particular advantage of the inhabitants of the City of Pueblo." *Pueblo Aircraft Service, Inc. v. City of Pueblo, supra*, 679 F.2d at 811. We find this reasoning persuasive.

Here, as noted, the Use and Lease Agreement provided that Cherry Creek would operate a fixed base operation at the airport. As in *Pueblo Aircraft Service, Inc.*, the City elected to provide certain necessary services and supplies by leasing portions of the airport to a fixed base operator, Cherry Creek, which would in turn provide those supplies and services to those airport users. In our view, the operation of the airport with respect to such essential functions is not for the particular benefit of the citizens of the municipality, but, rather, for the public good in general. *See Pueblo Aircraft Service, Inc. v. City of Pueblo, supra. See also City of Macon v. Powell*, 133 Ga.App. 907, 213 S.E.2d 63 (1975) (driver of airport security vehicle acting in governmental capacity although municipal airport was proprietary in some other respects); *cf.* 18A E. McQuillin, *Municipal Corporations*, § 53.96 (3d ed.1990) (with respect to municipal liability for torts, prevailing view is that operation and maintenance of an airport is a proprietary function, but some courts have held it is a governmental function).

Neither *Rocky Mountain Motor Co. v. Airport Transit Co., supra*, nor *Westrac, Inc. v. Walker Field, supra*, dictates a contrary conclusion. Unlike here, in *Rocky Mountain Motor Co.*, the establishment and assignment of the municipal airport occurred sixteen years before the General Assembly declared the operation of the airport to be a governmental function. *Westrac* is also distinguishable from the circumstances here because the car rental operations there are not airport operations for the public good in general.

Thus, we conclude that, under the circumstances here, the trial court did not err as a matter of law in determining that the City was operating in its governmental capacity.

B.  Equitable and Quasi–Contractual Relief

Cherry Creek also contends that the trial court erred as a matter of law in concluding that it may not assert claims for promissory estoppel, implied contract, or unjust enrichment. Although we conclude that it is possible to assert such equitable or quasi-contractual claims against a municipality acting in its governmental capacity, under the circumstances here relief is not available to Cherry Creek.

While the doctrine of estoppel is not applied as freely against a municipal corporation as it is against an individual, it is fully applicable against a municipality to prevent manifest injustice.  *See Franks v. City of Aurora,* 147 Colo. 25, 362 P.2d 561 (1961).

Where property is furnished to a municipal corporation pursuant to an unenforceable contract, and the municipality has not paid for the property, then the party supplying the property may, upon equitable terms, recover it *in specie.*  However, there can be no recovery where the property is no longer in existence or identifiable or where it cannot be restored to the plaintiff without serious damage to other property of the municipality.  *Normandy Estates Metropolitan Recreation District v. Normandy Estates Limited,* 191 Colo. 292, 553 P.2d 386 (1976).  *See also F.J. Kent Corp. v. Town of Dillon,* 648 P.2d 669 (Colo.App.1982).

Here, to assert successfully its claims for promissory estoppel, implied contract and unjust enrichment, Cherry Creek must show justifiable reliance on the representations made by the City that the Airport Authority had the authority to enter into·a binding contract on the City's behalf.

Cherry Creek did raise a question of material fact concerning whether it justifiably relied on the representations of city officials that the Airport Authority was authorized to contract with it without adoption of an ordinance by the City Council.  Specifically, the opening paragraph in the Use and Lease Agreement recites that the agreement is between the City acting by and through the Steamboat Springs Airport Authority and Cherry Creek.  Further, § 20.08 of the agreement provides:

This Contract constitutes the full and complete agreement of the parties and supersedes or incorporates any prior written and oral agreements.  In addition, [Cherry Creek] recognizes that no City official or employee, *other than the Airport Authority acting as a body at an Authority meeting* or the City Council acting as a body at a Council meeting, had authority to enter into a contract binding upon the City, or to modify the terms of this Contract on behalf of the City. Any such contact or modification to this Contract must be in writing and be executed by the parties hereto. (emphasis added)

Thus, the agreement itself represents that the Airport Authority had the authority to enter into a binding contract on behalf of the City.

Further, in response to the motion for summary judgment, Cherry Creek submitted an affidavit of the attorney who represented Cherry Creek in the lease agreement negotiations.  There, the attorney stated that he had specifically questioned the city attorney regarding the entity with which Cherry Creek was contracting and, further, about the nature of the relationship between the Airport Authority and the City. The affidavit states that the city attorney explained, as recited in the opening paragraph of the agreement, that Cherry Creek was dealing with the City of Steamboat Springs acting by and through the Airport Authority.

Cherry Creek also submitted an affidavit ·from the former city attorney that sets forth his belief that the Airport Authority had the power to enter into contracts binding upon the City and, further, that the Airport Authority held itself out as having such authority when negotiating the lease agreement with Cherry Creek.

However, Cherry Creek cannot recover in this instance because it did not establish that there had been a specific transfer of property to the City that the City is obligated under equitable principles to return.

In this regard, we note that affidavits filed subsequent to the granting of a motion for summary judgment cannot be

considered. *See Graven v. Vail Associates, Inc.,* 888 P.2d 310 (Colo.App.1994) *rev'd on other grounds,* 909 P.2d 514 (Colo.1995) (affidavits filed after the granting of summary judgment cannot be considered on a motion to reconsider).

Because ratification rests upon the doctrine of estoppel, *see* 10A E. McQuillin, *Municipal Corporations* § 29.103 (3d ed.1993), Cherry Creek is likewise unable to pursue recovery under this theory.

■ We recognize that theories of recovery pursuant to an invalid municipal contract are often blurred. *See* 10A E. McQuillin, *Municipal Corporations* § 29.103 (3d ed.1993). Nonetheless, because Cherry Creek has failed to address separately the issue of implied contract, we decline to address it here. *See Westrac, Inc. v. Walker Field, supra* (counsel must inform the court as to the specific errors relied upon, supporting facts in the record, and legal authority supporting the claim of error); *see also Committee for Better Health Care v. Meyer,* 830 P.2d 884 (Colo.1992) (counsel must do more than merely assert error in a vague and unexplained fashion).

Thus, albeit for slightly different reasons, we conclude that the trial court did not err in granting summary judgment against Cherry Creek on its claims for equitable relief.

### III. § 1983 Claim

Cherry Creek next contends that the trial court erred in dismissing on summary judgment its constitutional claims under 42 U.S.C. § 1983. We disagree.

Specifically, Cherry Creek contends that the defendants deprived Cherry Creek of its rights under the agreement thereby depriving it of a property interest protected by the Fourteenth Amendment. Cherry Creek also argues, relying on *Computer Sciences Corp. v. Ibarra,* 685 F.Supp. 748 (D.Colo.1988), that the loss of the contract coupled with injury to its reputation in the form of complaints about safety violations voiced at a public meeting created an actionable right under § 1983. Although Cherry Creek does not characterize this claim as a deprivation of a protected liberty interest, based upon its reliance on

*Computer Sciences Corp.,* we presume that is Cherry Creek's contention.

■ We note at the outset that Cherry Creek failed to designate in which capacity the individual defendants were being sued. However, Cherry Creek has not disputed the City's characterization that the individuals were being sued in their personal, rather than official, capacity. Thus, consistent therewith, we conclude that Cherry Creek pursued claims against the individual defendants under § 1983 in their personal capacities. *See Nieto v. State,* 952 P.2d 834 (Colo. App.1997) (*cert. granted* March 23, 1998) (failure to identify expressly the capacity in which a state officer is being sued does not necessarily require dismissal of a § 1983 claim; rather, the court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine whether an individual defendant is sued in a personal or official capacity).

To state a claim for relief under § 1983, the claimant must allege that some person deprived the complainant of a right, privilege, or immunity secured by the federal constitution, and that such person acted under color of state law. *Uberoi v. University of Colorado,* 713 P.2d 894 (Colo.1986).

■ Both individuals and municipalities are considered to be "persons" under 42 U.S.C. § 1983. *Montoya v. City of Colorado Springs,* 770 P.2d 1358 (Colo.App.1989).

### A. Property Interest

■ The requirements of procedural due process apply only to the deprivation of a liberty or property interest protected by the Fourteenth Amendment. Property interests are not created by the Constitution, but rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Wilkerson v. State,* 830 P.2d 1121 (Colo.App.1992).

■ In alleging a deprivation of due process, a plaintiff must first demonstrate the existence of the property interest that en-

ables him or her to assert the constitutional claim, and the basis of his or her entitlement to it. *See Ellis v. City of Lakewood,* 789 P.2d 449 (Colo.App.1989).

█ Not every contract between a public entity and a private party gives rise to a property right that is protected by due process considerations inherent in the Fourteenth Amendment. Therefore, not every breach of a public contract by a local government results in a deprivation of property for Fourteenth Amendment purposes. *Givan v. City of Colorado Springs,* 876 P.2d 27 (Colo. App.1993), *rev'd on other grounds* 897 P.2d 753 (Colo.1995).

Here, as noted, the agreement between Cherry Creek and the City was null and void. Therefore, the trial court did not err in concluding that Cherry Creek lacks a basis to assert a protected property right entitled to constitutional protection.

### B. Liberty Interest

█ Defamation alone does not give rise to a § 1983 claim. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, some federal courts have recognized that a tangible injury to an economic interest combined with defamatory statements may give rise to a liberty deprivation under the due process clause of the Fourteenth Amendment. *See Koerpel v. Heckler,* 797 F.2d 858 (10th Cir.1986); *Computer Sciences Corp. v. Ibarra, supra.*

In *Computer Sciences Corp., supra,* the defendants agreed among themselves, without the benefit of public scrutiny and without consulting with other knowledgeable personnel employed by the State, to end a then-existing contract with the plaintiff. It was that action combined with allegations of defendants' malicious publication of false information impugning plaintiff's reputation which adversely affected plaintiff's ability to secure further contracts with governmental bodies that provided a colorable basis for alleging a claim under 42 U.S.C. § 1983.

█ We note that because Cherry Creek has not been deprived of any rights under the invalid agreement, it cannot rely on the loss of the agreement itself as a basis for a § 1983 claim. Even if Cherry Creek could show damage to its reputation resulting from the safety concerns discussed at the public City Council meeting, it cannot show injury to a tangible economic interest because it has no legal or equitable rights under the agreement. Thus, we conclude that the trial court did not err in dismissing on summary judgment Cherry Creek's claims for constitutional violations under 42 U.S.C. § 1983.

Because of this disposition, we need not address Cherry Creek's other contentions that the trial court erred in concluding that the doctrine of immunity barred the § 1983 claim, or that the trial court erred in finding that Cherry Creek is not entitled to punitive damages or attorney fees pursuant to 42 U.S.C. § 1988 (1994).

### V. Stay

█ Cherry Creek contends that the trial court erred in denying it a stay pending appeal. We perceive no error.

Here, as noted, the trial court entered summary judgment dismissing Cherry Creek's claims for relief and declaring the agreement void. The trial court, thereafter, denied Cherry Creek's motion for a stay concluding: "No execution may issue on the judgment entered, and Defendants have not filed any document requesting relief based on the entry of the declaratory judgment that may be considered proceedings to enforce the judgment. There is simply nothing to stay."

The City did pursue eviction proceedings in the FED action after summary judgment had been granted. However, Cherry Creek voluntarily stipulated to vacate the premises and that action was dismissed with prejudice.

Thus, because Cherry Creek voluntarily vacated the premises, the trial court did not err in denying Cherry Creek a stay pending appeal.

Judgment affirmed.

CRISWELL and JONES, JJ., concur.