The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
January 24, 2019

**2019COA8**

**No. 17CA1662, *Roybal v. City & Cty. of Denver* — Municipal Law — City and County of Denver — Charter of the City and County of Denver — Denver Revised Municipal Code**

In this case, a division of the court of appeals concludes that the City and County of Denver's Career Service Authority Board correctly interpreted sections 2.6.2 and 2.6.4 of the Charter of the City and County of Denver. The division analyzes the Charter, along with relevant Career Service Rules, Denver Revised Municipal Code provisions, and state statutes, and concludes that the Manager of Safety may authorize a designee within the department, other than the Deputy Manager of Safety, for the purposes of hiring, disciplining, and terminating employees of the Denver Sheriff Department.

The division also concludes that the Board did not improperly promulgate or retroactively apply a new Career Service Rule in this case by discussing and implementing the policy behind an existing Career Service Rule during its review of the pre-disciplinary proceedings.

Accordingly, the division affirms the district court's judgment, which affirmed the Board's decision and order, which, in turn, affirmed the termination of plaintiff's employment with the Denver Sheriff Department.

COLORADO COURT OF APPEALS     **2019COA8**

Court of Appeals No. 17CA1662
City and County of Denver District Court No. 16CV33995
Honorable Edward D. Bronfin, Judge

Robert Roybal,

Plaintiff-Appellant,

v.

City and County of Denver, a Colorado municipal corporation; and Department
of Safety for the City and County of Denver,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE TERRY
Taubman and Fox, JJ., concur

Announced January 24, 2019

Elkus & Sisson, P.C., Lucas Lorenz, Donald C. Sisson, Denver, Colorado, for
Plaintiff-Appellant

Kristin M. Bronson, City Attorney, Charles T. Mitchell, Assistant City Attorney,
Natalia S. Ballinger, Assistant City Attorney, Denver, Colorado, for Defendants-
Appellees

¶ 1    Under sections 2.6.2 and 2.6.4 of the Charter of the City and County of Denver (Charter), is the authority to hire, discipline, and terminate Denver Sheriff Department (DSD) employees limited solely to the Manager of Safety (Manager) and the Deputy Manager of Safety (Deputy)?  Based on the plain language of the relevant Charter sections, we conclude that the answer to this question is "no."  And under the facts of this case, we also conclude that the City and County of Denver's Career Service Authority Board (Board) did not improperly promulgate and retroactively apply a Career Service Rule (C.S.R.) to this case.

¶ 2    Plaintiff, Robert Roybal, contends that the district court erred in affirming the decision and order of the Board, which affirmed the termination of his employment with the DSD.  We affirm the judgment of the district court.

## I.    Background

¶ 3    Roybal was a Deputy Sheriff for the DSD.  After an investigation, the Department of Safety's Civilian Review Administrator, Shannon Elwell (Administrator), determined that Roybal had violated multiple rules, warranting disciplinary action, and terminated his employment.

¶ 4     Roybal appealed the termination to a career service hearing officer, arguing that his conduct had not violated any rules. After conducting a de novo review of the Administrator's decision, the hearing officer affirmed Roybal's termination.

¶ 5     Roybal then appealed the hearing officer's decision to the Board, reasserting that his conduct violated no rules and contending that his termination was void as an ultra vires act. Roybal argued that the Charter reserved the authority to discipline or terminate DSD employees solely to the Manager or to the Deputy. The Board affirmed the hearing officer's decision.

¶ 6     Roybal appealed the Board's order to the district court under C.R.C.P. 106(a)(4), asserting that the Board abused its discretion in affirming the hearing officer's decision. The district court concluded that the Charter was unambiguous and that the Administrator had disciplinary authority to terminate Roybal's employment. The district court also rejected Roybal's claim that the Board abused its discretion in determining that procedural errors committed by the DSD during the pre-disciplinary process did not require Roybal's termination to be reversed, and the court affirmed the Board's order.

## II.    Disciplinary Authority Under the Charter

¶ 7    Roybal contends that, under the Charter, the authority to discipline and terminate DSD employees rests solely with the Manager or the Deputy, to the exclusion of the Administrator, and therefore his termination was void as an ultra vires act.  We disagree.

### A.    Standard of Review and Applicable Law

¶ 8    C.R.C.P. 106(a)(4) provides that the district court may review actions and provide relief "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law."

¶ 9    "In an appeal of a C.R.C.P. 106(a)(4) proceeding, the appellate court is in the same position as the district court concerning review of an administrative board's decision." *Shupe v. Boulder Cty.*, 230 P.3d 1269, 1272 (Colo. App. 2010).  We therefore review the decision of the administrative body itself, not that of the district court, and review de novo whether the agency abused its discretion. *Khelik v. City & Cty. of Denver*, 2016 COA 55, ¶ 12.  As relevant

here, an agency abuses its discretion if it has misconstrued or misapplied the law. *Id.* at ¶ 13.

### 1. Statutory Interpretation Principles

¶ 10     "The authority of a city's career service board is derived from that municipality's city charter." *City of Englewood v. Englewood Career Serv. Bd.*, 793 P.2d 585, 586 (Colo. App. 1989).

¶ 11     We apply the rules of statutory interpretation to municipal charters and ordinances. *Smith v. City & Cty. of Denver*, 789 P.2d 442, 445 (Colo. App. 1989). We begin with the plain meaning of the charter's and ordinance's language, reading words and phrases in context and construing them according to common usage. *Marshall v. Civil Serv. Comm'n*, 2016 COA 156, ¶ 15. If the language is unambiguous, we do not alter its plain meaning nor look any further. *Cook v. City & Cty. of Denver*, 68 P.3d 586, 588 (Colo. App. 2003).

¶ 12     We also construe charter provisions pertaining to the same subject matter as a whole to ascertain legislative intent and avoid inconsistencies and absurdities. *Id.* If a charter provision is susceptible of more than one reasonable interpretation, "the interpretation suggested by the city's executive and legislative

4

bodies is persuasive." *Id.* Similarly, we "defer to the interpretation of an administrative rule or regulation by the agency charged with its administration." *Ross v. Denver Dep't of Health & Hosps.*, 883 P.2d 516, 519 (Colo. App. 1994); *see also Regents of the Univ. of Colo. v. City & Cty. of Denver*, 929 P.2d 58, 61 (Colo. App. 1996) ("The agency's interpretation [of a rule it is charged with enforcing] is to be accepted if it has a reasonable basis in law and is warranted by the record.").

¶ 13 "Under the charter of the City and County of Denver, it is the Board which both promulgates and administers the Career Service Authority Rules and whose interpretation is therefore entitled to deference." *Ross*, 883 P.2d at 519.

### 2. Charter Provisions

¶ 14 Charter section 2.6.1 creates the Department of Safety and provides that that Department, subject to the supervision and control of the Mayor, shall have "full charge and control" of the DSD. Charter section 2.6.2 creates the position of Manager to be in charge of the Department of Safety. It also provides that the Manager "may appoint a Deputy Manager of Safety, who shall in addition to any other duties assigned perform such functions and

5

exercise such powers of the Manager as the Manager may specifically assign to such Deputy." *Id.*

¶ 15 Section 2.6.4 relates to the DSD. Among other things, that section specifies that the Mayor appoints the Sheriff; the Sheriff appoints deputy sheriffs; and the Sheriff has full charge and custody of Denver jails. *See id.* Section 2.6.4 provides that the Manager "shall be deemed the appointing authority pursuant to Career Service requirements for purposes of hiring, discipline and termination of Deputy Sheriffs and other employees within the Sheriff Department." *Id.*

¶ 16 Relatedly, C.S.R. 16, titled "Code of Conduct and Discipline," specifies the rules, grounds for discipline, and disciplinary process for City and County of Denver employees. C.S.R. 16-15, which substantively encompasses former C.S.R. 16-70, states that "[a]ppointing authorities may delegate in writing any authority given to them under this Rule 16 to a designee within his or her department or agency."

B.     Discussion

1.     Arguments Based on the Charter and Rules

¶ 17     Roybal contends that the Administrator lacked the authority to discipline or terminate DSD employees, and that only the Manager or Deputy has such authority.  He bases his argument on Charter sections 2.6.2 and 2.6.4, which, as noted above, create and give authority to the Manager.  He argues that because section 2.6.2 specifically allows the Manager to delegate authority to a Deputy, it constrains the delegation authority in section 2.6.4 such that the Manager may not delegate authority to anyone other than the Deputy.  We disagree.

¶ 18     The Board relied on its decision in a previous unrelated disciplinary action, where it concluded that the plain language of section 2.6.4 permits the Manager to designate someone — not necessarily a Deputy — with the authority to discipline employees of the DSD.  We agree with this conclusion.

¶ 19     According to section 2.6.2, the Manager has the discretion to appoint a Deputy, and the Deputy may perform "such functions and exercise such powers" as the Manager may assign.  But the

7

Charter does not limit the Manager's delegation authority to the Deputy.

¶ 20 There is also no indication in section 2.6.4 that the Manager's authority is limited when assigning functions or powers to others. Section 2.6.4 separately addresses the management, hiring, firing, responsibilities, and compensation of DSD employees. It provides the Manager with the authority to appoint others for the "purposes of hiring, discipline and termination of Deputy Sheriffs and other employees within the Sheriff Department." *Id.* Under section 2.6.4, the Manager is an "appointing authority pursuant to Career Service requirements." *Id.* This language is unambiguous and does not limit the Manager's authority to delegate responsibilities to others.

¶ 21 Reading the sections together because both concern the Manager's authority, *see Cook*, 68 P.3d at 588, we conclude that sections 2.6.2 and 2.6.4 provide the Manager with separate authority to delegate.

- Section 2.6.2 states that the Manager may appoint a Deputy to perform "such functions and exercise such powers" as the Manager may delegate.

- Section 2.6.4 states that the Manager is the appointing authority for purposes of hiring, discipline, and termination of DSD employees. The "Career Service requirements" referenced in section 2.6.4 provide at C.S.R. 16-15 that "[a]ppointing authorities" may delegate "any authority given to them under this Rule 16 to a designee within his or her department or agency."

¶ 22 Because section 2.6.4 gives the Manager appointing authority, and C.S.R. 16-15 allows the Manager to delegate disciplinary authority to a "designee within his or her department," the Manager was permitted to designate the Administrator as a disciplinary authority. And contrary to Roybal's contention, we do not discern any conflict between the C.S.R. and the Charter.

¶ 23 Therefore, the Board did not err when it concluded (1) that the Charter and the C.S.R. do not limit the Manager's ability to designate authority solely to the Deputy, and (2) that the Manager was permitted to delegate disciplinary authority to the Administrator.

## 2. Arguments Based on Municipal Code Provisions and State Statutes

¶ 24    Roybal next asserts that Denver Revised Municipal Code (D.R.M.C.) sections 14-122 and 18-6(e), and section 30-10-506, C.R.S. 2018, collectively declare that the Manager performs the duties of a Sheriff and that only a Sheriff can fire employees. He argues that these sections also demonstrate that the termination by the Administrator was unauthorized. We reject these arguments.

¶ 25    D.R.M.C. section 18-6(e) provides that "[i]t shall be unlawful for any department head or other officer of the city to willfully promote, discipline, or terminate any employee of the city except in strict conformance with the terms of the career service provisions of the charter and the career service rules." Because Roybal's termination conformed to the Charter and the C.S.R., we perceive no violation of this code provision.

¶ 26    D.R.M.C. section 14-122 provides that "[p]ursuant to Section A9.1 of the Charter, the manager of safety exercises the powers and performs the duties of sheriff under the laws of the state." Section 30-10-506 provides that a sheriff may appoint deputies and "may revoke such appointments at will." However, a sheriff must also

adopt personnel policies, including those concerning the review of revocation of appointments, and must provide a deputy with notice of a proposed revocation, as well as an opportunity to be heard prior to such revocation. *Id.*

¶ 27    To the extent Roybal implies that the statute prohibits delegation of the Manager's authority, Denver's home rule status would preclude the statute from superseding the D.R.M.C. *See* Colo. Const. art. XX, § 6; *see also Fraternal Order of Police, Colo. Lodge No. 27 v. City & Cty. of Denver*, 926 P.2d 582, 586 (Colo. 1996).

¶ 28    Having determined that the Manager could delegate this authority to the Administrator, we further conclude that the Board did not abuse its discretion in so ruling.

### 3.    Charter Section 2.6.4

¶ 29    In his reply brief, Roybal contends that the language of Charter section 2.6.4 refers to the requirements of the career service personnel system and not to the C.S.R. He argues that section 2.6.4 therefore invokes section 9.1.1 of the Charter, rather than C.S.R. 16, rendering Rule 16 inapplicable.

11

¶ 30    Because Roybal raises this issue for the first time in his reply

brief, we do not address it.  *See Vitetta v. Corrigan*, 240 P.3d 322,

330 (Colo. App. 2009) ("[W]e do not consider appellate arguments

raised for the first time in a reply brief.").

### III.    Disciplinary Proceedings

¶ 31    Roybal contends that procedural errors in the pre-disciplinary

process require reversal of his termination and that the Board

abused its discretion in concluding otherwise.  The procedural

errors he cites are (1) that only one division chief was present at the

disciplinary hearing, rather than the required two division chiefs,

and (2) that the Sheriff did not initiate the discipline by written

recommendation to the Manager.  According to Roybal, in making

these errors, the Board effectively created a new C.S.R., without

following its own rulemaking procedures, and applied the rule

retroactively to his case to excuse the DSD's violations of its own

policies.  We reject these contentions.

¶ 32    Even if we assume that these two procedural errors occurred

during the pre-disciplinary process, the Board ruled that the

hearing officer did not err in upholding Roybal's termination.  In so

ruling, the Board reasoned that

Career Service Rule 16-72(D) [renumbered to 16-47(D)] provides that an Agency's failure to strictly follow all pre-disciplinary guidelines set out in the Rules will not constitute grounds for reversing the discipline unless the failure to follow those rules substantially violated the rights of the employee. While this Rule only applies to the failure to follow Career Service Rules (rather than the Agency rules alleged by [Roybal]), we believe the policy expressed in this rule is sound and applicable to rules or procedures allegedly violated by the Agency in pre-disciplinary proceedings. Unless the violation of internal rules resulted in a substantial violation of [Roybal's] rights, said rules violations will not be grounds for disturbing imposed discipline. In this case, we find that [Roybal] received a full and fair pre-disciplinary process and that any irregularities in that process were trivial and in no way had an adverse impact on the rights of the [Roybal].

¶ 33     We determine that the Board did not engage in rulemaking, and we also agree with its reasoning that the occurrence of alleged procedural errors did not warrant a reversal of Roybal's termination.

¶ 34     The Board has a duty to "[c]ertify that personnel actions involving employees in the career service personnel system, including . . . disciplinary actions, and terminations are taken in strict accordance with the career service provisions of the charter,

13

career service rules, and any applicable ordinance of the city." D.R.M.C. § 18-2(a)(5). The Board is charged with "enforc[ing] rules necessary to foster and maintain a merit-based personnel system . . . , including but not limited to rules concerning . . . grievance procedures, and appeals from actions of appointing authorities to the Board and any hearing officers appointed by the Board." Charter § 9.1.1(A). "Dismissals, suspensions or disciplinary demotions of non-probationary employees in the Career Service shall be made only for cause . . . ." Charter § 9.1.1(B). The C.S.R. vests hearing officers with the "authority to hear and decide all appeals permitted by this Rule 19" and requires hearing officers to "perform the functions necessary to implement and maintain a fair and efficient process for appeals." C.S.R. § 19-30(A). The Board then must "[i]ssue a decision in writing, affirming, modifying, or reversing the hearing officer's decision." C.S.R. § 19-70.

¶ 35 Merely discussing and implementing the policy of a C.S.R. does not implicate quasi-legislative rulemaking by the Board. *See* Charter § 9.1.1(A). The Board's mention of C.S.R. 16-72(D) was limited to explaining its reasoning in concluding that trivial

14

deviations from pre-disciplinary regulations do not warrant the reversal of a termination decision.

¶ 36    We perceive no error in the Board's finding that Roybal "received a full and fair pre-disciplinary process and that any irregularities in that process were trivial and in no way had an adverse impact on [his rights]."

## IV.    Sufficiency of Evidence

¶ 37    In his opening brief, Roybal contends that the district court erred in affirming his termination because the record did not contain sufficient evidence to support a finding that his conduct violated any rules warranting disciplinary action.  However, because Roybal's reply brief withdrew this issue as a basis for the appeal, we do not address it.  *See In re Marriage of Morton*, 2016 COA 1, ¶ 37 (declining to address issues withdrawn by counsel at oral argument).

## V.    Motion to Strike

¶ 38    We deny Roybal's motion to strike portions of the answer brief that include citations to an unpublished opinion of another division of this court.  We have disregarded any prohibited citations in that brief.

## VI.    Conclusion

¶ 39    The judgment is affirmed.

JUDGE TAUBMAN and JUDGE FOX concur.